**Desiree STAN, Plaintiff,**

v.

**WAL–MART STORES, INC., Wal–Mart Stores East, Inc., d/b/a Wal–Marts, Sam's East, Inc., d/b/a Sam's Club and John Does, Defendants.**

No. 99–CV–0653.

United States District Court, N.D. New York.

Aug. 23, 2000.

Zappone, Fiori Law Firm, Latham, NY (Joseph W. Zappone, of counsel), for plaintiff.

Wal–Mart Stores, Inc., Bentonville AK (Susan Klooz, of counsel), O'Connor, O'Connor Law Firm, Albany, NY (Michele M. Monserrate, of counsel), for defendants.

### MEMORANDUM—DECISION & ORDER

McAVOY, District Judge.

Plaintiff commenced the instant action pursuant to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et. seq.,* and NEW YORK CIVIL RIGHTS LAW § 47, claiming that she was discriminated against in the use of a public accommodation on account of her disability. Presently before the Court is Defendants' motion for summary judg-

ment pursuant to FED. R. CIV. P. 56 seeking dismissal of Plaintiff's Complaint in its entirety.

## I. BACKGROUND

Because the instant matter is before the Court on Defendants' motion for summary judgment, the following facts are presented in the light most favorable to Plaintiff. *See Ertman v. United States*, 165 F.3d 204, 206 (2d Cir.1999).

Plaintiff Desiree Stan suffers from an eye disease that has rendered her legally blind. Defendants concede for purposes of this motion that she is disabled within the meaning of the ADA. To assist her in getting around, Plaintiff uses a service dog.

Plaintiff shopped at Wal–Mart Stores ("Wal–Mart") approximately four times per year and at Sam's Club, approximately ten times per year. *See* July 17, 2000 Stan Dep. at ¶ 3. She alleges that on three occasions (two at Wal–Mart and one at Sam's) she experienced discrimination on account of her disability.

In one instance, in approximately November 1997, Plaintiff entered the East Greenbush, New York Wal–Mart store with her guide dog by her side. A Wal–Mart greeter [1] told her she could not bring her pet into the store. Plaintiff informed the greeter that it was a service dog, to which the greeter iterated that dogs were not allowed into the store. Plaintiff pushed past the greeter and entered the store. The greeter did not attempt to follow Plaintiff or further obstruct her from entering the store. Plaintiff approached the service desk and asked to speak with the general manager. Because the general manager was unavailable at the time, a Wal–Mart employee asked if Plaintiff would like to speak with the assistant manager. Plaintiff declined and agreed to wait for the general manager. Plaintiff proceeded to shop until she was paged by the general manager. After Plaintiff explained to the general manager that the greeter "tried to eject me from the store because she wouldn't recognize that my dog was a service animal ... after I told her it was a service animal," the general manager apologized and indicated that she would properly train her employees about such matters. Plaintiff thanked the general manager, made her purchases, and left the store. *See* Pl. Dep. at 18–20.

Thereafter, Plaintiff shopped at the East Greenbush store one or two times without incident, although she is uncertain whether she had her service dog with her at those times. *See id.* at 20–21.

In another similar instance, on May 12, 1998, Plaintiff entered a Sam's Club store in Latham, New York. A greeter advised Plaintiff that pets were not allowed in the store. Plaintiff stepped past the greeter and her ex-husband informed the greeter that Plaintiff is blind and the dog was a service animal, not a pet. Plaintiff then proceeded to what she believed to be the service counter and asked for the address and telephone number of Wal–Mart's corporate headquarters. The employee at the counter responded that she did not have that information. Plaintiff then requested to speak with the store's general manager. The employee proceeded to page the manager. At that point, the greeter approached Plaintiff. Plaintiff asked him if he was the general manager, to which he responded that he was not. Believing that Defendants tried to deceive her into believing that the greeter was the general manager, Plaintiff walked away and proceeded to do her shopping. As she was paying for her purchases, Plaintiff remarked to the cashier that she could not believe that the address and telephone number for corporate headquarters were not available. The cashier then informed Plaintiff that she had previously gone to

---

1. A "greeter" is a Wal–Mart or Sam's employee who greets customers as they enter the store and ensures that they do not bring impermissible items into the store. Greeters at Sam's also ensure that only members enter the store.

the membership desk rather than the service desk and directed Plaintiff to the service desk. *See id.* at 22–24.

Plaintiff proceeded to the service desk and asked for the address and telephone number for corporate headquarters. The store's general manager then approached Plaintiff and inquired if there was a problem. Plaintiff explained what had happened. The manager apologized, informed Plaintiff that he would give the matter immediate attention, and stated that he would train all of the associates regarding allowing service dogs into the store and that Plaintiff and her dog would not be excluded again. The manager also gave Plaintiff the address and telephone number for corporate headquarters. *See id.* at 24–25.

That same day, Plaintiff wrote a letter to corporate headquarters complaining of the treatment she experienced at Wal–Mart and Sam's Club. Plaintiff sought to train Defendants' employees properly and to obtain a promise that she would never again be harassed on account of her entering one of Defendants' stores with a service dog. *See id.* at 25.

When Plaintiff did not receive a response to her letter, she telephoned corporate headquarters to inquire whether they received the letter. Defendants stated that they could not find a copy of the letter on file. Plaintiff then requested the name and fax number for Wal–Mart's president. On May 24, 1998, Plaintiff again wrote a letter complaining of the treatment she received at the East Greenbush Wal–Mart and the Latham Sam's Club. *See id.* at 25–26.

In late May 1998, a representative of either Wal–Mart or Sam's Club responded by telephone to Plaintiff's letter. Because Plaintiff was not home at the time of the this telephone call, the representative left a message stating that she had taken care of the problem, that they had trained their associates, and that if Plaintiff had any questions she could feel free to call. Plaintiff returned the telephone call and offered

to assist in training employees. The representative declined Plaintiff's offer and stated that she would not again be subjected to such treatment. *See id.*

Approximately one month later, Plaintiff entered a Sam's Club store. The greeter asked Plaintiff if her dog was a service dog, to which she responded that it was. The greeter then asked Plaintiff whether she could explain to him what a service dog is. Plaintiff proceeded to educate the greeter about what her dog did, the dog's value, and her rights under the ADA. The greeter thanked Plaintiff and returned to his post. *See id.* at 26–27.

Finally, a third instance occurred in July 1998 in the East Greenbush Wal–Mart. Plaintiff entered and shopped at the store without incident. However, when she was waiting on line to pay for her items, a store employee approached her and inquired whether her dog was a service dog. Plaintiff responded that it was. The employee then asked if Plaintiff was blind. Plaintiff responded that it was none of his business and it should be sufficient for him to know that the dog was a service dog. The employee allegedly responded that he needed to know if she was blind enough to have a service dog and if she did not tell him if she was blind he would eject her from the store. A supervisor then appeared, stated that the matter was improperly handled, and apologized for the employee's behavior. The assistant manager then approached Plaintiff to resolve the matter. Plaintiff told the manager what happened, stated that she would never come back to the store, made her purchases, and left. *See id.* at 33–34.

Plaintiff continued to shop at Sam's Club until approximately February 1999 without incident. *See id.* at 41. In fact, the records submitted by Defendants reveal that Plaintiff purchased items at Sam's Club on at least six occasions after the May 12 incident. *See* Def. Ex. I (Plaintiff's Sam's Club Purchase History).

Plaintiff has since discontinued shopping at Wal–Mart and has allowed her Sam's membership to expire. Instead, Plaintiff drives longer distances to shop at other stores.

Scott Lewis, who was the manager of Sam's Club at the time of the instances alleged in the Complaint, testified at deposition that Sam's Club trains its employees to assist disabled members and allow service animals into the facility. *See* Lewis Dep. at 13. He further testified that there are signs at the entrance welcoming service animals. Moreover, in response to the incident with Plaintiff, Lewis discussed the matter at morning meetings for several days "to make sure our partners and associates understand service animals." *Id.* at 15–16. Lewis explained that "the service animal would have a harness on them identifying them as a service animal. If there wasn't a harness, we had every right to ask if it was a service animal." *Id.* at 20–21.

Shawn Ramsdell, who was the co-manager at the East Greenbush Wal–Mart at all times relevant hereto, testified at deposition that sales associates and greeters are trained on matters related to disabled individuals. *See* Ramsdell Dep. at 18–23. He also testified that store policy is to permit all service animals in the store, although he was unsure how an employee could recognize a service animal without having to ask the individual. *See id.*

Plaintiff commenced the instant action claiming violations of Title III of the ADA and the New York Civil Rights Law on account of her disability. Plaintiff seeks compensatory and punitive damages and an order requiring Defendants to adopt and/or modify their policies and train their employees with respect to service dogs. Presently before the Court is Defendants' motion for summary judgment seeking dismissal of the Complaint in its entirety.

## II. DISCUSSION

### A. Summary Judgment Standard

This Court has set forth the applicable standard for summary judgment in numerous reported decisions, *see, e.g., Hoffman v. County of Delaware,* 41 F.Supp.2d 195 (N.D.N.Y.1999), *aff'd,* 205 F.3d 1323 (2d Cir.2000), and need not restate it here. The Court will apply the standards set forth in those decisions to the pending motion.

### B. Title III of the ADA

#### 1. Procedure Under the ADA

Pursuant to 42 U.S.C. § 12188(a), as is pertinent hereto, an individual "who is being subjected to discrimination on the basis of disability in violation of this subchapter" may avail him or herself of the remedies provided at 42 U.S.C. § 2000a–3(a). Section 2000a–3(a), in turn, allows for "a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order."

#### 2. Whether Plaintiff Must Exhaust Administrative Remedies

■ Defendants first contend that Plaintiff's claim should be dismissed because she failed to exhaust her administrative remedies. Title III of the ADA incorporates 42 U.S.C. § 2000a–3(a) only; not 2000a–3(c). *See* 42 U.S.C. § 12188(a)(1). Because § 2000a–3(c) contains the exhaustion requirement, but was not incorporated into the ADA, the ADA does not mandate exhaustion prior to commencing suit. *See Hunt v. Meharry Medical College,* 2000 WL 739551, at *5 (S.D.N.Y.2000); *Mirando v. Villa Roma Resorts, Inc.,* 1999 WL 1051118, at *1 (S.D.N.Y.1999). The Second Circuit's decision in *Hope v. Cortines,* 69 F.3d 687, 688 (2d Cir.1995), does not require a different result. *Hope* involved a claim for relief under the Individual with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et. seq.,* which requires exhaustion prior to seeking relief in the courts, *see* 20 U.S.C. § 1415, that also could have been afforded via a claim under

the ADA. The district court in that case plainly stated that "[t]he conclusion is thus inescapable: The ADA is bound by IDEA's exhaustion requirement for claims seeking relief available under IDEA despite the fact that a plaintiff generally need not exhaust administrative remedies before pursuing an ADA claim unrelated to IDEA." *Hope v. Cortines*, 872 F.Supp. 14, 21 (E.D.N.Y.1995), *aff'd*, 69 F.3d 687. Neither the IDEA nor any other statute's exhaustion requirement is applicable here.

### 3. Whether Plaintiff May Recover Monetary Damages

■ Next, Defendants claim that Plaintiff cannot seek monetary relief for violations of Title III. Because the plain terms of the statute do not provide for monetary relief, *see* discussion *supra* at § II(B)(1), Plaintiff's request for such is dismissed. *See Guardians Ass'n. v. Civil Serv. Comm'n. of the City of New York*, 463 U.S. 582, 103 S.Ct. 3221, 3231, 77 L.Ed.2d 866 (1983); *Hunt*, 2000 WL 739551, at *6; *Mirando*, 1999 WL 1051118, at *1 (S.D.N.Y.); *Anonymous v. Goddard Riverside Community Center, Inc.*, 1997 WL 475165, at *2 (S.D.N.Y.1997); *Hoepfl v. Barlow*, 906 F.Supp. 317 (E.D.Va.1995). That leaves Plaintiff's request for injunctive relief.

### 4. The ADA's Prohibitions

Before addressing whether Plaintiff is entitled to injunctive relief, the Court will first review the general prohibitions contained in Title III of the ADA. 42 U.S.C. § 12182(a) provides the general rule that:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns ... or operates a place of public accommodation.

2. As a retail store, Defendants are the owners or operators of a public accommodation with-

*See also Johnson v. Gambrinus Company/Spoetzl Brewery*, 116 F.3d 1052 (5th Cir.1997). The latter sections of § 12182 spell out the ADA's more specific prohibitions as they apply to places of public accommodation.[2] *See* 42 U.S.C. § 12182(b). This includes the:

failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

The Department of Justice regulations provide that public accommodations "[g]enerally ... shall modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability." *See* 28 C.F.R. § 36.302(c); *see also Johnson*, 116 F.3d at 1060–61.

■ To establish liability under Title III of the ADA, Plaintiff must prove that she: (1) has a disability (a point which Defendants concede for purposes of this motion); (2) Defendants are owners or operators of a place of public accommodation (another point conceded by Defendants); and (3) Defendants discriminated against Plaintiff by denying her a full and equal opportunity to participate in Defendants' stores on the basis of her disability. *See Calvarese v. City of Oswego*, 1998 WL 315091, at *1 (N.D.N.Y.1998). The last element is disputed here.

### 5. Injunctive Relief

Plaintiff seeks an injunction requiring Defendants to refrain from discriminating against visually impaired individuals in the full and equal enjoyment of its services and to train and educate employees regarding the treatment of visually impaired individuals. *See* Compl. at pp. 8–9.

in the meaning of the ADA. *See* 42 U.S.C. § 12181(7)(E).

In prosecuting this matter, Plaintiff faces two hurdles the Court will discuss simultaneously—standing and irreparable harm. In any matter brought in a federal court, the Plaintiff must have standing. To have standing, Plaintiff must allege injury in fact and that the injury is capable of being redressed by a favorable ruling from the court. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). It is questionable whether Plaintiff has suffered injury in fact. Although Plaintiff may have been humiliated or embarrassed by the way she was treated by Defendants, because they permitted her to shop at their stores without restriction, it is unlikely that this rises to the level of an injury under the ADA. *See* discussion *infra* at 126–27. However, for purposes of the ensuing discussion, the Court will assume Plaintiff has suffered past injury.

■ Because there are no allegations of ongoing discrimination (the Complaint alleges only discrete instances of discrimination in the past), to have standing to obtain injunctive relief, Plaintiff must show a likelihood of future discrimination. *See Levy v. Mote,* 104 F.Supp.2d 538, 544 ("In ADA cases, courts have held that a plaintiff does not have standing to obtain injunctive relief if [s]he cannot demonstrate a likelihood that [s]he will suffer future discrimination at the hands of the defendant."); *Hoepfl,* 906 F.Supp. at 321 (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 1665–67, 75 L.Ed.2d 675 (1983)). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974); *see also Lyons,* 103 S.Ct. at 1665; *Hoepfl,* 906 F.Supp. at 321; *Trautz v. Weisman,* 846 F.Supp. 1160, 1163 (S.D.N.Y.1994). Similarly, in cases seeking injunctive relief, a plaintiff must demonstrate irreparable harm. *Rodriguez ex rel. Rodriguez v. DeBuono,* 175 F.3d 227, 235 n. 9 (2d Cir.1999); *Ticor Title Ins. Co. v. Cohen,* 173 F.3d 63, 68 (2d Cir.1999) (citing *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982); *New York State Nat'l Org. for Women v. Terry,* 886 F.2d 1339, 1362 (2d Cir.1989), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990)); *see also Lyons,* 103 S.Ct. at 1666. In the instant matter, irreparable harm would also seem to require a showing of a likelihood of future discrimination.

The evidence demonstrates that Defendants have policies permitting service animals in their stores. In fact, both the East Greenbush Wal–Mart and the Latham Sam's Club have signs out front welcoming service animals. The evidence further demonstrates that all employees receive at least some training on allowing individuals with service animals to enter the store, although there does not appear to be any training on how employees are to distinguish service animals from pets. Defendants' policies permit employees to inquire whether animals entering the store are service animals. If the customer responds in the affirmative, the employee is to permit the customer and the animal into the store. *See* Ramsdell Dep. at 23, 29. In addition, the record before the Court reveals that, in response to Plaintiff's incidents, Defendants conducted training on the issue to avoid any such problems in the future. *See* Pl. Dep. at 26; Lewis Dep. at 15–16; Ramsdell Dep. at 34–35, 38.

Importantly, there is no evidence tending to suggest that the alleged discrimination is continuous or ongoing, or that Plaintiff is likely to experience "injury which is concrete, particularized and imminent." *Levy,* 104 F.Supp.2d 538, 544. First, the record reveals that Plaintiff has no intention of returning to any of Defendants' stores. In her affidavit, Plaintiff stated that she has decided not to shop at Defendants' stores because: (1) she does not want to subject herself to discriminatory treatment; (2) she is fearful of improp-

er treatment at Defendants' stores; and (3) her daughter, "who accompanies [Plaintiff] on nearly every shopping excursion, has absolutely refused ... to patronize a Wal–Mart or Sam'[s] Club store with me." *See* July 17, 2000 Stan Aff., at ¶ 6. If Plaintiff does not intend to shop at Wal–Mart's or Sam's Club, she cannot be subject to discrimination by them on account of her disability and any order from this Court would be of no consequence and would not redress any alleged injury.

Second, assuming Plaintiff was willing to shop at one of Defendants' stores tomorrow, there is no indication in the record of a likelihood that Plaintiff will suffer discrimination on account of her disability. In fact, the evidence demonstrates just the opposite. Plaintiff testified at deposition that she shopped at the East Greenbush Wal–Mart store one or two times after the November 1997 incident and before the July 1998 incident without being questioned about her dog, denied entrance, or otherwise questioned. *See* Pl. Dep. at 20–21, 55. Plaintiff refused to shop at the East Greenbush Wal–Mart following the July 1998 incident. Plaintiff also testified that she entered the Sam's Club store after the instances alleged in the Complaint on several occasions without incident. *See* Pl. Dep. at 15, 41, 55–56; *see also* Def. Ex. I. On one particular occasion when Plaintiff returned to Sam's Club after the above alleged instances, Plaintiff was approached by a greeter who inquired whether her dog was a service dog. When Plaintiff responded that it was, the employee inquired as to the purpose of a service dog so he could better understand Plaintiff's situation, but permitted her to enter the store without further ado. *See* Pl. Dep. at 26–27. The evidence also demonstrates that Plaintiff visited Sam's Club on numerous occasions after May 12, 1998, without incident. Moreover, as previously noted, Defendants undertook remedial action by talking to the employees involved and conducting training on service animals. Thus, although Plaintiff may have been subjected to humiliation and inexcusable treatment by Defendants' employees on several occasions, because there does not appear to be any likelihood that Plaintiff will be subjected to discrimination by Defendants in the future, the Court finds that Plaintiff lacks standing to seek injunctive relief.

■ Assuming Plaintiff did have standing and that the complained of conduct constitutes a violation of the ADA, for similar reasons, the Court finds that Plaintiff has failed to demonstrate irreparable harm entitling her to the requested injunctive relief. *See Lyons,* 103 S.Ct. at 1665; *Hoepfl,* 906 F.Supp. at 321–22. In fact, there is no suggestion that Plaintiff will be exposed to any future harm. Furthermore, because Defendants allow persons with service dogs in their stores [3] and have conducted training on sensitivity towards persons with disabilities and their policies permitting service dogs in their stores, it cannot be said that Defendants failed to make reasonable modifications to its policies to allow Plaintiff the equal benefits of shopping at its stores or have otherwise discriminated against Plaintiff on account of her disability.

Without question, Plaintiff should not be subjected to embarrassing and humiliating personal questions about her disability. Similarly, she should not be subject to lengthy interrogation regarding her service dog, provided that it is equipped with the appropriate harness. However, at all times alleged in the Complaint, Plaintiff was permitted to shop at Defendants' stores with management's apologies for the inappropriate treatment she received from the greeters. Unfortunately, legislation such as the ADA cannot regulate individuals' conduct so as to ensure that they will never be rude or insensitive to persons

---

3. In each instance alleged in the Complaint, Plaintiff was permitted to complete her shopping.

with disabilities. Such a goal would be impossible to attain. For this reason, Defendants cannot guarantee that an individual employee will not act inappropriately in a particular instance. However, under the ADA, Defendants can and must ensure that they adopt the proper policies and procedures to train their employees on dealing with disabled individuals and make reasonable efforts to ensure that those policies and procedures are properly carried out and enforced. Because Defendants here have the proper policies with respect to service animals and have counseled its employees with respect to such issues, it has carried out its obligations under Title III of the ADA.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and Plaintiff's Complaint is DISMISSED IN ITS ENTIRETY.[4]

**IT IS SO ORDERED**

---

**4.** Having dismissed the federal claims at this early stage of the litigation, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3); *see also Castellano v. City of New York*, 142 F.3d 58, 74 (2d Cir.), *cert. denied*, 525 U.S. 922, 119 S.Ct. 276, 142 L.Ed.2d 228 (1998).