06-4909-cv
Camarillo v. Carrols Corp.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————————

August Term, 2007

(Argued: January 10, 2008                    Decided: February 8, 2008 )

Docket No. 06-4909-cv

————————

ALICE CAMARILLO,

*Plaintiff-Appellant,*

—v.—

CARROLS CORPORATION, MAGLIOCCA STORES, INC., REEHER MAJIK, INC., EL RANCHO FOODS, INC. AND WENDONIE, LLC,

*Defendants-Appellees.*

————————

B e f o r e :

STRAUB, WESLEY, and LIVINGSTON, *Circuit Judges.*

————————

Plaintiff, who is legally blind, brought this action against several fast food restaurants under the Americans with Disabilities Act for failing to effectively communicate to her their menu selections. The United States District Court for the Northern District of New York (Gary L. Sharpe, *Judge*) dismissed the complaint for lack of standing on the basis that plaintiff was still able to eat at the restaurants. We vacate and remand.

————————

MICHAEL G. O'NEILL, New York, New York, *for Plaintiff-Appellant.*

JEFFREY J. MAYER (Helen N. Baker, *on the brief*), Freeborn & Peters LLP, Chicago, Illinois, *for Defendant-Appellee Carrols Corporation.*

JOSEPH GUARINO, Epstein Becker & Green, P.C., Newark, New Jersey (Alesia J. Kantor, Epstein Becker & Green, P.C., New York, New York, *on the brief*), *for Defendant-Appellee El Rancho Foods, Inc.*

Greg A. Riolo (Michelle McKee Cubbon, *on the brief*), Jackson Lewis, LLP, White Plains, New York, *for Defendants-Appellees Magliocca Stores, Inc. and Reeher Majik, Inc*.

Michael R. Wright, Levene Gouldin & Thompson, LLP, Vestal, New York, *for Defendant-Appellee Wendonie, LLC.*

_____

*Per Curiam:*

According to her complaint, Alice Camarillo, who is legally blind but is able to read enlarged writing at a very close distance, frequently patronizes the fast food restaurants near her home that are owned and operated by defendants. Defendants' restaurants do not have large print menus that Camarillo can read, and when she has asked for employees to read her the menu items, she has been made fun of, stared at, and forced to wait until other customers behind her in line were served, and the employees have often read her only part of the menus. Based on these alleged actions, Camarillo filed claims against defendants under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12182 ("ADA"), and New York Executive Law § 296.2(a). The United States District Court for the Northern District of New York (Gary L. Sharpe, *Judge*) dismissed Camarillo's complaint for lack of standing on the ground that she was always permitted to eat at defendants' establishments and thus suffered no harm that is cognizable under the ADA. We vacate and remand because Camarillo's complaint sufficiently alleges that defendants' restaurants did not ensure "effective communication" of their menu items. 28 C.F.R. § 36.303(c).

2

**I. Background**

Because this is an appeal of a District Court's dismissal pursuant to Fed. R. Civ. P. 12(b)(6), we accept all of the factual allegations in Camarillo's complaint as true and draw all reasonable inferences in her favor. *Wojchowski v. Daines*, 498 F.3d 99, 104 (2d Cir. 2007). Camarillo, who resides in Catskill, New York, is able to read menu items only if they are printed in a large typeface and she holds the menu directly in front of her eyes. Compl. ¶ 15. Camarillo frequently patronizes the fast food restaurants owned and operated by defendants: the Burger King restaurants in Catskill and Hudson, New York, operated by defendant Carrols Corp.; the McDonald's restaurants in Catskill and Cairo, New York, operated by defendant Magliocca Stores, Inc.; the McDonald's restaurant in Hudson, New York, operated by defendant Reeher Majik, Inc.; the Taco Bell restaurant in Kingston, New York, operated by defendant El Rancho Foods, Inc.; and the Wendy's restaurant in Hudson, New York, operated by defendant Wendonie, LLC.

Camarillo alleges that she received largely similar treatment at all of defendants' restaurants. Because none of the restaurants has large-print menus, Camarillo is unable, on her own, to read the menu items and prices. *Id.* ¶ 14. On at least two occasions at each restaurant, Camarillo, after advising the employees that she could not read the posted menu items, was not offered any substitute means for learning the menu options. *Id.* ¶¶ 27, 40, 52, 64, 76. On such occasions, Camarillo asked for the employees to read the menu to her, but at each restaurant, "often" only "part" of the menu was read to her. *Id.* ¶¶ 29, 42, 54, 66, 78. Camarillo alleges that on some visits to the Carrols' Burger King restaurants, employees "laughed and stared at her," and once, when she asked to be directed to the women's restroom, employees "directed her to

3

the men's room and laughed at her humiliation." *Id.* ¶ 30. The complaint also alleges that at El Rancho Foods' Taco Bell, the cashier refused to read the menu to Camarillo until the cashier "had filled the food orders of patrons who were in line behind plaintiff," and at Wendonie's Wendy's, "patrons behind plaintiff were taken out of order before plaintiff." *Id.* ¶¶ 66, 78.

Camarillo, claiming that defendants' actions constituted violations of the ADA and New York Executive Law, filed her original complaint in New York State Supreme Court, Greene County, in August 2005. Defendants removed the action to the Northern District of New York, and after Camarillo filed an amended complaint, defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). In granting defendants' motions to dismiss, the District Court reasoned that "[d]espite Camarillo's conclusory allegations to the contrary, she has not alleged that she was denied use and enjoyment of the services provided at defendants' restaurants." *Camarillo v. Carrols Corp.*, No. 1:05-CV-1365, 2006 WL 2795238, at *3 (N.D.N.Y. Sept. 25, 2006). According to the District Court, Camarillo's complaint concedes that employees at defendants' restaurants "were willing and able to read her the menus," and that on every occasion she "was permitted to eat." *Id.* The District Court found that as a result, Camarillo "has not alleged a single instance when she was deprived of the services enjoyed by other patrons." *Id.* Accordingly, Camarillo did not allege facts to show injury under the ADA and thus lacked standing to pursue her claims. *Id.* at *4.

**II. Discussion**

"We review *de novo* the district court's grant of a motion to dismiss." *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). "To survive dismissal, the plaintiff must provide the grounds upon which [her] claim rests through factual allegations sufficient 'to

4

raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S. Ct. 1955, 1965 (2007)); *see also Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) ("The plaintiff's factual allegations must be enough to give the defendant fair notice of what the claim is and the grounds upon which it rests.").

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). Discrimination is defined by the Act to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." *Id.* § 12182(b)(2)(A)(iii). Regulations promulgated under these provisions by the United States Department of Justice provide that "public accommodation[s] shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c).

To state a claim under Title III, Camarillo must allege (1) that she is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against her by denying her a full and equal opportunity to enjoy the services defendants provide. *See* 42 U.S.C. § 12182(a); *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007); *Powell v. Nat'l Bd. of Med. Exam'rs.*, 364

5

F.3d 79, 85 (2d Cir. 2004); *Stan v. Wal-Mart Stores, Inc.*, 111 F. Supp. 2d 119, 124 (N.D.N.Y. 2000).

Only the last element is disputed here. Camarillo argues that her complaint sufficiently alleges that she was not afforded a "full and equal" opportunity to enjoy the services at defendants' restaurants because the restaurants provided neither a large print menu that she could read, nor any other means to ensure "effective communication" of their menu options. Defendants contend that all that is required under the ADA is for their employees to be "available" to read the menus to Camarillo. They argue that Camarillo's allegations at most amount to a complaint about poor or impolite service, and that the ADA does not provide a remedy for occasional service failures.

Assuming the allegations in the complaint are true and drawing all reasonable inferences in plaintiff's favor, we find that Camarillo has adequately pleaded that she has standing and that defendants violated the ADA. The complaint alleges that on multiple visits to each of defendants' restaurants, Camarillo informed employees that because of her disability she could not read the menu herself, and that the employees "often" responded with annoyance or impatience, at best reading her only a "part" of the menu. Camarillo alleges that at a McDonald's restaurant operated by Magliocca Stores, Inc., for instance, a cashier pointed to promotional literature and insisted that it constituted the menu. Compl. ¶ 42. As even defendants acknowledge, the ADA and the regulations promulgated thereunder require owners of public accommodations to "ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c). While restaurants are not necessarily required to have on hand large print menus that Camarillo would be able to read, they are required to ensure that

6

their menu options are effectively communicated to individuals who, like Camarillo, are legally blind. *See* U.S. Dep't of Justice, *Americans with Disabilities Act – Guide for Places of Lodging: Serving Guests Who Are Blind or Who Have Low Vision* 9 (2001), *available at* http://www.usdoj.gov/crt/ada/lodblind.pdf. Put simply, Camarillo cannot experience "full and equal enjoyment" of defendants' services if she is unable to access the list of the services available to her.

The District Court interpreted Camarillo's complaint as conceding that "restaurant employees at all of defendants' establishments were willing and able to read her the menus." *Camarillo*, 2006 WL 2795238, at *3. But on a motion to dismiss, the only fair inference to draw from Camarillo's complaint is that on numerous occasions, employees at defendants' restaurants were at best willing to read her part of the menu, and that they were unwilling to communicate effectively the range of options available to her. This is sufficient to state a claim under the ADA.

We do not disagree with the District Court that "legislation such as the ADA cannot regulate individuals' conduct so as to ensure that they will never be rude or insensitive to persons with disabilities." *Id.* (quoting *Stan*, 111 F. Supp. 2d at 126-27). However, Camarillo alleges more than mere rudeness or insensitivity, and more than one or two isolated mistakes. Rather, a reasonable inference to be drawn from her complaint is that defendants failed to adopt policies or procedures to effectively train their employees how to deal with disabled individuals. Such a failure to train can constitute a violation of the ADA, which requires owners of public accommodations, with limited exceptions not applicable here, "to take such steps as may be necessary to *ensure* that no individual with a disability is excluded, denied services, segregated

7

or *otherwise treated differently* than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii) (emphases added); *see also Stan*, 111 F. Supp. 2d at 127 ("[U]nder the ADA, [d]efendants can and must ensure that they adopt the proper policies and procedures to train their employees on dealing with disabled individuals and make reasonable efforts to ensure that those policies and procedures are properly carried out and enforced.").

Defendants argue that Judge McAvoy's decision in *Stan v. Wal-Mart Stores* supports the proposition that Camarillo cannot have suffered cognizable injury under the ADA because she was never denied service at defendants' restaurants. This is a misreading of *Stan*. In that case, the plaintiff, who was legally blind and used a service dog to assist her, was told once by a Wal-Mart employee, and on a separate occasion by a Sam's Club employee, that she could not bring her service dog into the stores. 111 F. Supp. 2d at 121-22. On both occasions, however, managers at the stores apologized to the plaintiff, told her that she was permitted to bring her dog into the stores, and assured her that they would train their employees to ensure that the same mistake would not be made again. *Id.* In addition, evidence established that the defendants had official policies permitting service animals in their stores, that both stores had signs out front welcoming service animals, that all employees received at least some training on allowing individuals with service animals to enter the stores, and that, in response to the incidents involving the plaintiff, the defendants conducted further training on the issue to avoid any similar problems in the future. *Id.* at 125. Based on this evidence, the District Court granted summary judgment in favor of defendants because there was "no indication in the record" that the plaintiff would likely suffer discrimination on account of her disability at the defendants'

stores in the future and the plaintiff thus lacked standing to obtain injunctive relief. *Id.* at 126. *Stan*, therefore, does not stand for the proposition that so long as a disabled individual is permitted to shop (or eat), she cannot have suffered injury under the ADA. Rather, *Stan* holds simply that summary judgment is warranted where all the evidence in the record demonstrates that the defendants have taken all necessary steps "to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals." 42 U.S.C. § 12182(b)(2)(A)(iii). Here, there is no such evidence – as this was a motion to dismiss – and it is reasonable to infer from the allegations of the complaint that defendants did not adopt the kind of policies or provide the type of employee training that would ensure that Camarillo would not suffer discrimination upon returning to their establishments. Of course, our analysis at this point is confined to reviewing the District Court's dismissal under Fed. R. Civ. P. 12(b)(6); we have no opinion as to whether Camarillo's claims will survive after evidence is taken.

We therefore find that Camarillo has stated a claim under the ADA. We also find that Camarillo has standing to pursue this claim, at least at this stage in the litigation, because: (1) she has alleged past injury under the ADA (namely, defendants' discriminatory failure to ensure effective communication of their menu items); (2) it is reasonable to infer from her complaint that this discriminatory treatment will continue; and (3) it is also reasonable to infer, based on the past frequency of her visits and the proximity of defendants' restaurants to her home, that Camarillo intends to return to these restaurants in the future. *See Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137-38 (9th Cir. 2002) (holding that a plaintiff possesses standing to obtain injunctive relief under Title III of the ADA if she is aware of the defendant's

9

discriminatory conditions; those conditions, and the plaintiff's awareness of them, are continuing; and the plaintiff plausibly intends to return to the place of discrimination).

We therefore vacate the District Court's dismissal of Camarillo's claims under the ADA. We also vacate the dismissal of Camarillo's state law claims because "the scope of the disability discrimination provisions of [New York Executive Law § 296.2(a)] are similar to those of the Americans with Disabilities Act and § 504 of the Rehabilitation Act, a precursor to the ADA." *Doe v. Bell*, 754 N.Y.S.2d 846, 852 n.7 (N.Y. Sup. Ct. 2003) (citing *Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 154-56 (2d Cir. 1998)); *see also Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 117 n.1 (2d Cir. 2004) ("New York State disability discrimination claims are governed by the same legal standards as federal ADA claims.").

**III. Conclusion**

For the reasons set forth above, the judgment of the District Court is vacated and the case is remanded for further proceedings consistent with this opinion.