Filed 7/7/16  Supancic v. Turner CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| NICOLAS SUPANCIC, | B263896 |
| Plaintiff and Appellant, | (Los Angeles County |
| v. | Super. Ct. No. BC495121) |
| DOUGLAS G. TURNER, | **MODIFICATION OF OPINION [NO CHANGE IN JUDGMENT]** |
| Defendant and Respondent. | |

THE COURT:

It is ordered that the opinion filed herein on June 7, 2016, be modified as follows:

On page 4, last line, the phrase "took plaintiff's initial motion" is modified to read "took defendant's initial motion."

Plaintiff's petition for rehearing is denied.  No change in judgment.

_____

RAPHAEL, J.[*]              KRIEGLER, ACTING P. J.              BAKER, J.

_____

[*]      Judge of the Superior Court of the County of Los Angeles, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 6/7/16  Supancic v. Turner CA2/5  (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| NICOLAS SUPANCIC, | B263896 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC495121) |
| v. | |
| DOUGLAS G. TURNER, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Maureen Duffy-Lewis, Judge.  Affirmed.

Morris S. Getzels Law Office and Morris S. Getzels, for Plaintiff and Appellant.

Douglas G. Turner, in pro. per., for Defendant and Respondent.

## INTRODUCTION

Plaintiff and appellant Nicholas Supancic (plaintiff) alleged that he was a disabled person under the Americans with Disabilities Act (ADA) (42 U.S.C. § 12181 et seq.) who required the aid of a service dog, and that his dog was denied access to a pub that defendant and respondent Douglas Turner (defendant) owned and leased to a limited liability company which operated the pub.  On appeal from the judgment entered following the trial court's order granting defendant's summary judgment motion, plaintiff contends that the trial court erred in granting summary judgment because there were triable issues of fact on his theory of owner/lessor liability under the ADA.  Plaintiff also contends that the trial court erred by denying his motion to reconsider.

We hold that the trial court did not err in granting summary judgment because, under the ADA and its implementing regulations, defendant did not have direct liability to plaintiff based solely on his status as the owner and lessor of the public accommodation in which the alleged disability discrimination occurred.  We also affirm the order denying reconsideration because the record on that motion is inadequate to allow us to consider the challenge to that ruling on appeal.  We therefore affirm the judgment and the order denying reconsideration.

## FACTUAL BACKGROUND

In the operative first amended complaint, plaintiff alleged the following about the incident that gave rise to his lawsuit against defendant.  On March 13, 2012, around 9:15 p.m., plaintiff entered the White Harte Public House (White Harte) with a friend and plaintiff's service dog which was wearing a vest identifying it as a service dog.  Pierre Moeini[1] approached plaintiff and told him that he must pick up the service dog or leave.  Plaintiff explained to Moeini that plaintiff's dog was a service dog and that Moeini was infringing upon plaintiff's rights.  Moeini "physically forced" plaintiff out of the White Harte along with plaintiff's dog and friend.

---

[1]     Moeini, formerly a codefendant, settled his portion of this lawsuit.

2

Outside the pub, plaintiff advised Moeini that he was violating the law. In response, Moeini told plaintiff that he didn't "'give a f[u]ck'" and to "'leave or get [his] ass kicked.'" When plaintiff informed Moeini that he had committed an additional wrongful act by threatening plaintiff with bodily harm, Moeini said, "'I don't give a sh[i]t. How about this. I'm not letting you in because you look like a little faggot, you and your friend look like faggots, and you have a little faggot dog.'" Plaintiff again advised Moeini that those statements were wrongful acts, but Moeini just laughed and told plaintiff that he owned "'six of these places'" and that Moeini did not allow homosexuals into any of them.

At that point, Moeini realized that someone had been recording his statements, so he said, "'I will smash your head into a million pieces if you do not get the f[u]ck off my property right now.'" Moeini then assumed a threatening physical stance, causing plaintiff and his friend to leave quickly.

In support of the summary judgment motion directed at the first amended complaint, defendant submitted the following facts with supporting evidence: Plaintiff's disagreement was with Moeini only. Plaintiff's theory of liability against defendant individually was based on an agency theory or the fact that defendant was liable as an owner or landlord. Defendant was not an agent or partner, but was a 50 percent owner of Harte LLC. Harte LLC owned and operated the White Harte, not defendant. "The '[l]andlord' as defined by [t]he lease [under which Harte LLC occupied the White Harte was] Pierre Moeini and [defendant]."

In his opposition to defendant's separate statement of undisputed facts, plaintiff submitted the following facts with supporting evidence: Moeini was acting on behalf of the White Harte and defendant at the time plaintiff was ejected from that establishment. The real property on which the White Harte was located was owned by defendant and Moeini. Defendant and Moeini, as landlords, leased the real property on which the White Harte was located to Harte LLC, as tenant, and defendant and Moeini were the members of Harte LLC. The White Harte was a place of public accommodation licensed to sell

3

food and drinks. Harte LLC had no operating agreement. Defendant signed the White Harte fictitious business name statement as an individual registrant.

## PROCEDURAL BACKGROUND

### A.     Motion to Amend

While an initial summary judgment motion directed at the original complaint was pending hearing, plaintiff moved the trial court for leave to amend his complaint (motion to amend). Plaintiff sought leave to delete one sentence of his complaint that had alleged that defendant was a general partner who owned and operated the White Harte. Instead, plaintiff wished to allege that defendant owned the real property on which the White Harte was located, and that he leased the real property to codefendant Harte, LLC.

According to plaintiff's motion, the proposed new allegations would allow him to state a claim against defendant for violation of the ADA because that Act and the regulations promulgated thereunder (28 C.F.R. § 36.201) provide that an owner and lessor of real property can be held directly liable for a lessee's refusal to allow a service dog to accompany a disabled person into a public accommodation located on the owner/lessor's real property. Plaintiff further argued that because a violation of the ADA also constitutes a violation of the Unruh Civil Rights Act and the California Disabled Persons Act (Civ. Code, §§ 54.1, subd. (d) & 54.2, subd. (b)), he could state claims against defendant individually in his first cause of action (violation of Unruh Civil Rights Act), his second cause of action (violation of California Disabled Persons Act), his fourth cause of action (violation of the ADA), and his seventh cause of action (violation of the Unruh Civil Rights Act). In making his motion for leave to amend, plaintiff limited his theory of direct liability against defendant to a single violation of the ADA based on Moeini's denial of access to plaintiff's service dog and defendant's ownership and lease of the real property on which the White Harte was located.

Defendant opposed the motion to amend, but the trial court granted it, allowed plaintiff to file a first amended complaint, took plaintiff's initial motion for summary

4

judgment off calendar, and ordered defendant to refile and recalendar a hearing on a motion for summary judgment directed at the first amended complaint.

The first amended complaint in fact alleged no specific act or omission by defendant, relying instead on defendant's status as an owner of the real property at the time that Moeini acted to eject plaintiff from the White Harte.

### B.     Summary Judgment Motion

Defendant filed a motion for summary judgment directed at the first amended complaint. Based on his facts and evidence discussed above, defendant argued: (i) plaintiff's action was based solely on an incident between Moeini and plaintiff, and defendant was not Moeini's partner or agent, but rather a member with Moeini in Harte LLC, the lessee and operator of the White Harte, which meant that, under former Corporations Code section 17101, subdivision (a) (now section 17703.04), he could not be held individually liable for the alleged statutory violation of the ADA committed by Harte LLC; (ii) the purpose of the ADA is limited to prohibiting discrimination with respect to the design, construction, and alteration of the buildings and facilities of a public accommodation and it was not intended to address a "one-off" verbal altercation at a public accommodation; (iii) under the ADA, plaintiff was required to plead and prove that defendant himself engaged in an act of discrimination against plaintiff with the intent to discriminate against him, and plaintiff had failed to make any showing as to either element; (iv) the ADA does not authorize a private party to sue for damages and plaintiff is not entitled to an injunction against defendant; and (v) the Unruh Civil Rights Act requires plaintiff to plead and prove that defendant is a business establishment and that defendant intended to discriminate, and plaintiff did not make any showing as to either element.

### C.     Opposition to Summary Judgment Motion

Plaintiff opposed the summary judgment motion based on his facts and evidence discussed above. He argued that: (i) discrimination against persons with service dogs is

5

prohibited under the ADA (28 C.F.R. § 36.104) and the California Disabled Persons Act (Civ. Code, § 54.2) and discrimination based on sexual orientation is prohibited under the Unruh Civil Rights Act (Civ. Code, § 51, subds. (b), (c), & (e)(6)); (ii) defendant is liable to plaintiff under the ADA because the discrimination prohibited under that Act is not limited to the physical qualities of a public accommodation (28 C.F.R. § 36.302) and because, as owner and lessor, he can be liable for violations that occur at a public accommodation located on his real property (42 U.S.C. § 12182, subd. (a); 28 C.F.R. § 36.201, subd. (b)); (iii) plaintiff is not required under the Unruh Civil Rights Act to prove that defendant intentionally discriminated against him (*Munson v. Del Taco, Inc.* (2009) 46 Cal.4th 661, 678); (iv) in addition to business establishments, a "person" can be liable under the Unruh Civil Rights Act; and (v) in addition to being liable to plaintiff under the ADA, defendant is liable to plaintiff under state law because a violation of the ADA is also a violation of the Unruh Civil Rights Act and the California Disabled Persons Act (Civ. Code, §§ 54.1, subds. (f), (d) & 54.2, subd. (b)).

Plaintiff's argument made clear his position that, based on his ownership status alone, "[d]efendant is liable as a matter of law for the disability discrimination against [plaintiff ] at the White Harte Public House." In his opposing separate statement of undisputed facts, plaintiff agreed that his action was based upon ownership liability and offered no facts about any specific act or omission by defendant.

### D. Trial Court's Ruling

Following argument on the summary judgment motion, the trial court issued a minute order that provided as follows: "[Defendant] presents evidence that he is 50% owner of Harte LLC and Harte LLC is the owner of the subject property. . . . [¶] Motion for summary judgment is GRANTED. [¶] Claims lack disputed material fact. There are no facts presented that the Harte LLC had any policies that would support or enforce any type of discrimination action. All evidence relates to Moeini only. [¶] The court queries a question of law—can a member of an LLC be liable for the LLC's purported actions[?] That answer is "'no.'" [¶] No member of the limited liability company shall be

6

personally liable for any liability of the limited liability company solely by reason of being a member of that limited liability company. Corporations Code [section] 17101[, subdivision] (a). [¶] Case DISMISSED as there are no remaining defendants."

### E. Motion to Reconsider

Following the issuance of the trial court's order granting the summary judgment motion and dismissing the action, plaintiff filed a motion to reconsider that order. The motion was made on the grounds that the trial court had made a mistake of fact by finding that Harte LLC owned the real property upon which the White Harte was located and had made a mistake of law by concluding that a public accommodation could not be liable for disability discrimination unless it had a policy or practice of committing such discrimination.

Defendant apparently opposed the motion to reconsider[2] and plaintiff filed a reply brief in support thereof. After hearing argument on the motion, the trial court denied it on the grounds that it was not based on new facts or law and the required declaration in support of the motion[3] was inadequate.

## DISCUSSION

### A. Standard of Review

Our review of the trial court's ruling on the summary judgment motion is governed by well established principles. ""'A trial court properly grants a motion for summary judgment only if no issues of triable fact appear and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); see also *id*., § 437c, subd. (f) [summary adjudication of issues].) The moving party bears the burden

---

[2]    Defendant's opposition to the motion to reconsider is not included in the record on appeal.

[3]    The required declaration in support of the motion to reconsider is not included in the record on appeal.

7

of showing the court that the plaintiff 'has not established, and cannot reasonably expect to establish,'" the elements of his or her cause of action. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460 [30 Cal.Rptr.3d 797, 115 P.3d 77].)' (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 720 [68 Cal.Rptr.3d 746, 171 P.3d 1082].) We review the trial court's decision de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037 [32 Cal.Rptr.3d 436, 116 P.3d 1123].)" (*State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1017-1018.)

"We review the trial court's decision [on a summary judgment motion] de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. (*Artiglio v. Corning, Inc.* (1998) 18 Cal.4th 604, 612 [76 Cal.Rptr.2d 479, 957 P.2d 1313].) In the trial court, once a moving defendant has 'shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established,' the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .' (Code Civ. Proc., § 437c, subd. (*o*)(2); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854-855 [107 Cal.Rptr.2d 841, 24 P.3d 493].)" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477.)

In analyzing a motion for summary judgment, "'"we identify the issues framed by the pleadings since it is these allegations to which the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading. [Citations.]"'" (*Swanson v. Morongo Unified School Dist.* (2014) 232 Cal.App.4th 954, 963.) "'As a corollary of the de novo review standard, the appellate court may affirm a summary judgment on any correct legal theory, as long as the parties had an adequate opportunity to address the theory in the trial court. [Citation.]'" (*California School of Culinary Arts*

8

*v. Lujan* [(2003)] 112 Cal.App.4th [16,] 22.) "'Regardless of how the trial court reached its decision, it falls to us to examine the record de novo and independently determine whether that decision is correct.'" (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694 [23 Cal.Rptr.3d 915].) "The sole question properly before us on review of the summary judgment is whether the judge reached the right *result . . . .*" (*Ibid.*) (*Lexin v. City of San Diego* (2013) 222 Cal.App.4th 662, 672-673.)

### B. Order Granting Summary Judgment

This appeal raises the question whether, based on merely a defendant's status as the owner of real property or of an LLC that operates on the property, the defendant is liable under the ADA for a discriminatory action taken by an individual on the property and/or the entity that operates on the property. We assume for purposes of this appeal that the individual, Moeini, committed an ADA violation by ordering plaintiff and his service dog to leave the White Harte, and that Harte LLC is vicariously liable for this conduct along with Moeini.

#### 1. Owner/Lessor Liability Under the ADA in General

Under the ADA and its implementing regulations, an owner and lessor of a public accommodation has an affirmative duty to ensure compliance with the equal access requirements of that Act. "Title III of the ADA establishes that 'no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . . .' 42 U.S.C. § 12182(a). 'Discrimination' is defined as, among other things, 'a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities . . . .' 42 U.S.C. § 12182(b)(2)(A)(ii). The Department of Justice has issued regulations stating that, 'generally, a public accommodation shall modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability.' 28 C.F.R. §

9

36.302(c)(1). By this regulation the Department of Justice intended that 'the broadest feasible access be provided to service animals in all places of public accommodation . . . .' 28 C.F.R. Pt. 36, App. B at 697." (*Lentini v. Cal. Ctr. for the Arts* (9th Cir. 2004) 370 F.3d 837, 843, fn. omitted.)

"Under the ADA, liability attaches to landlords and tenants alike. *See* 42 U.S.C. § 12182(a) (providing that the ADA applies to 'any person who owns, leases (or leases to), or operates a place of public accommodation'); 28 C.F.R. § 36.201(b) (providing that 'both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are' [subject to the ADA]). [¶] Nevertheless, 28 C.F.R. § 36.201(b) provides: 'As between the parties, allocation of responsibility for complying with the [ADA] may be determined by lease or other contract.' 28 C.F.R. § 36.201(b)." (*Botosan v. Fitzhugh* (S.D. Cal. 1998) 13 F.Supp.2d 1047, 1053-1054.)

Generally, a plaintiff can sue either the landlord or the tenant in alleging ADA noncompliance. In *Botosan v. Paul McNally Realty* (9th Cir. 2000) 216 F.3d 827, the court explained that an allocation of responsibility for ADA compliance between a landlord and tenant in a lease is not binding on third parties, such as a disabled person who has been the victim of disability discrimination. "[T]he regulation [28 C.F.R. § 36.201(b)] states that a landlord is a 'public accommodation,' which triggers coverage under Title III. *See* § 12182(a). Furthermore, the regulation provides that allocation of responsibility between the landlord and a tenant by lease is effective only 'as between the parties.' 28 C.F.R. § 36.201(b). Thus, contractual allocation of responsibility has no effect on the rights of third parties. *See Independent Living Resources* [(D. Or. 1997) 982 F. Supp. [698,] 767. The power to waive or impose liability as against a third party resides only in Congress, and Congress has stated that both the landlord and tenant are liable under the Act." (*Id*. at p. 833.)

## 2. *Application of General ADA Liability Principles Here*

Plaintiff does not and cannot articulate a viable theory of vicarious liability, such as agency, against defendant, who has an ownership interest in an limited liability company that runs the White Harte. Thus, in amending the complaint while the initial summary judgment motion was pending, plaintiff limited his theory to liability based solely on defendant's status as an owner or lessor under the ADA. According to plaintiff's theory, defendant had direct liability to him for the alleged ADA violation based solely on his status as owner/lessor of the real property upon which the violation occurred. As plaintiff construes the ADA, he was required to plead and prove only that (i) a violation of the ADA occurred at the White Harte on the night in question; and (ii) defendant was the owner/lessor of the real property on which the White Harte was located. Plaintiff therefore concludes that because there were triable issues as to his theory of direct liability, i.e., whether the alleged ADA violation occurred and whether defendant was the owner of the real property on which the White Harte is located, the summary judgment motion should have been denied.

Plaintiff's argument on appeal and his theory of direct liability are based on a misreading of the ADA and the regulations promulgated thereunder. Although the Act and the implementing regulations reflect Congress's intent to impose upon owners/lessors of public accommodations broad liability for ADA violations that occur at those public accommodations, that liability is not always based merely on their ownership status alone. Although in cases involving architectural barriers, the regulatory scheme may impose on owners a duty based on their status as owners, here the applicable regulation—28 C.F.R. § 36.302(c)(1)—defines the scope of an owner/lessor's liability: "[A] public accommodation [or an owner/landlord] shall modify policies, practices, and procedures to permit the use of service animals by an individual with a disability." Under this regulation, "[a] landlord incurs liability only if the landlord implements a discriminatory policy, practice, or procedure." (*Haynes v. Wilder Corp. of Delaware* (M.D. Fla. 2010) 721 F.Supp.2d 1218, 1228 (*Haynes*) [finding landlord not liable for alleged

11

discrimination by tenants against handicapped persons, absent a discriminatory policy, practice, or procedure].)

The 1991 ADA implementing regulations provide an instructive example, one which happens to mention service animals: "[I]n general landlords should not be given responsibility for policies a tenant applies in operating its business, if such policies are solely those of the tenant. Thus, if a restaurant tenant discriminates by refusing to seat a patron, it would be the tenant, and not the landlord, who would be responsible, because the discriminatory policy is imposed solely by the tenant and not by the landlord. If, however, a tenant refuses to modify a 'no pets' rule to allow service animals in its restaurant because the landlord mandates such a rule, then both the landlord and the tenant would be liable for violation of the ADA when a person with a service dog is refused entrance." (*Haynes, supra*, 721 F.Supp.2d at p. 1228 [quoting 36 C.F.R. Pt. 36 App. B].)

Thus, under the facts of this case, defendant's duty to plaintiff under the ADA was, at most, limited to ensuring that Harte LLC, the lessee and operator of the public accommodation, had in place policies, practices, and procedures that would permit the use of service animals by disabled persons who patronized the White Harte. "In order to state a claim for violation of Title III, which authorizes private actions only for injunctive relief, not monetary damages, see, e.g., Powell v. National Board of Medical Examiners, 364 F.3d 79, 86 (2d Cir. 2004), a plaintiff must 'establish that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that *the defendants discriminated against the plaintiff within the meaning of the ADA,*' Roberts v. Royal Atlantic Corp., 542 F.3d 363, 368 (2d Cir. 2008), cert. denied, 556 U.S. 1104, 129 S.Ct. 1581, 173 L.Ed.2d 675 (2009); see Camarillo v. Carrols Corp., 518 F.3d 153, 156 (2d Cir. 2008) ('Camarillo')" (*Krist v. Kolombos Rest., Inc*. (2012) 688 F.3d 89, 94-95, italics added.)

Plaintiff, however, did not plead or provide any proof that defendant violated this duty and discriminated against him, and instead predicated his theory of direct liability on the alleged fact of the violation and defendant's mere ownership of the real property

where that alleged violation occurred.  Therefore, defendant was entitled to summary judgment against plaintiff on his ADA cause of action, as well as the derivative state law causes of action that were predicated on the alleged ADA violation, because he was not directly liable to plaintiff based merely on his status as owner/lessor of the real property upon which the White Harte is located.

### C.    Order Denying Motion to Reconsider

As noted, neither the opposition to the motion to reconsider nor the required declaration in support of that motion is included in the record.  The record is therefore inadequate to allow us to rule on the merits of plaintiff's challenge to the order denying that motion.  We therefore affirm the order on that basis.

Alternatively, based on the record we have, we would nevertheless affirm the challenged order on the merits.  Code of Civil Procedure section 1008, subdivision (a) requires that the motion be based on new or different facts, circumstances, or law. [4]  As the trial court correctly observed, plaintiff did not base his motion on new facts or law.  Instead, he based his motion on the trial court's purported mistake of fact—Harte LLC owned the real property on which the White Harte is located—and the court's mistake of law—defendant could only be liable for disability discrimination if he had engaged in a practice of committing such discrimination.  As a result, the order denying the motion to reconsider must be affirmed.

---

[4]    Code of Civil Procedure section 1008, subdivision (a) provides in pertinent part: "When an application for an order has been made to a judge, or to a court, and refused in whole or in part, or granted, or granted conditionally, or on terms, any party affected by the order may, within 10 days after service upon the party of written notice of entry of the order and based upon new or different facts, circumstances, or law, make application to the same judge or court that made the order, to reconsider the matter and modify, amend, or revoke the prior order.  The party making the application shall state by affidavit what application was made before, when and to what judge, what order or decisions were made, and what new or different facts, circumstances, or law are claimed to be shown."

**DISPOSITION**

The judgment is affirmed.  Defendant is awarded costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



RAPHAEL, J.*


We concur:



KRIEGLER, ACTING P. J.



BAKER, J.

---

\*      Judge of the Superior Court of the County of Los Angeles, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.