20-1552-cv (L)
Calcano v. Swarovski N. Am. Ltd.

# United States Court of Appeals
# for the Second Circuit

August Term 2020

(Argued: January 13, 2021          Decided: June 2, 2022)

Docket Nos. 20-1552(Lead), 20-1559(Con), 20-1588(Con), 20-1594(Con),
20-1608(Con)

_____

MARCOS CALCANO, on behalf of himself and all other persons
similarly situated; YOVANNY DOMINGUEZ, on behalf of himself and
all other persons similarly situated; BRAULIO THORNE, on behalf of
himself and all other persons similarly situated; JAMES MURPHY,
on behalf of himself and all other persons similarly situated,

*Plaintiffs-Appellants*,

v.

SWAROVSKI NORTH AMERICA LIMITED; BANANA
REPUBLIC, LLC; JERSEY MIKE'S FRANCHISE SYSTEMS, INC.;
THE ART OF SHAVING-FL, LLC; KOHL'S, INC.,

*Defendants-Appellees.**

_____

Before:

LIVINGSTON, *Chief Judge*, and LOHIER and PARK, *Circuit Judges*.**

---

* The Clerk of the Court is respectfully directed to amend the caption of the lead appeal, 20-1552, as set forth above.

** Judge Robert A. Katzmann, of the United States Court of Appeals for the Second Circuit, was part of this panel but passed away following oral argument. The panel was reconstituted in accordance with regular procedures.

This appeal involves five lawsuits in which visually impaired plaintiffs sued defendant stores under the Americans with Disabilities Act ("ADA") for failing to carry braille gift cards. The five nearly identical complaints allege that Plaintiffs live near Defendants' stores, have been customers in the past, and intend to purchase gift cards when they become available in the future. But missing from these conclusory allegations is any explanation of how Plaintiffs were injured by the unavailability of braille gift cards or any specificity about Plaintiffs' prior visits to Defendants' stores that would support an inference that Plaintiffs intended to return. The United States District Court for the Southern District of New York (Woods, *J.*) dismissed Plaintiffs' ADA claims for lack of standing and, in the alternative, for failure to state a claim. We **AFFIRM** because Plaintiffs' conclusory, boilerplate allegations fail to establish standing.

Judge LOHIER concurs in a separate opinion.

G. OLIVER KOPPELL, Law Offices of G. Oliver Koppell & Associates, New York, NY (Daniel F. Schreck, Law Offices of G. Oliver Koppell & Associates, New York, NY; Bradly G. Marks, Marks Law Firm, P.C., New York, NY; Jeffrey M. Gottlieb, Gottlieb & Associates, New York, NY, *on the brief*), *for Plaintiffs-Appellants.*

STEPHANIE SCHUSTER, Morgan, Lewis & Bockius LLP, Washington, DC (Anne Marie Estevez and Beth S. Joseph, Morgan, Lewis & Bockius LLP, Miami, FL; Michael F. Fleming, Morgan, Lewis & Bockius LLP, New York, NY, *on the brief*), *for Defendants-Appellees Swarovski North America Limited and Banana Republic, LLC.*

JOSEPH J. LYNETT (Rebecca M. McCloskey, *on the brief*), Jackson Lewis P.C., White Plains, NY, *for Defendants-Appellees Jersey Mike's*

*Franchise Systems, Inc. and The Art of Shaving-FL, LLC.*

MICHAEL VATIS (Michael Keough and Meghan Newcomer, *on the brief*), Steptoe & Johnson LLP, New York, NY, *for Defendant-Appellee Kohl's, Inc.*

James A. Dean, Womble Bond Dickinson (US) LLP, Winston-Salem, NC; A. Owen Glist, Constantine Cannon LLP, New York, NY, *for Amici Curiae The Retail Litigation Center, Inc., Restaurant Law Center, National Retail Federation, and National Association of Theatre Owners, in Support of Defendants-Appellees.*

PARK, *Circuit Judge*:

This appeal involves five lawsuits in which visually impaired plaintiffs sued defendant stores under the Americans with Disabilities Act ("ADA") for failing to carry braille gift cards. The five nearly identical complaints allege that Plaintiffs live near Defendants' stores, have been customers in the past, and intend to purchase gift cards when they become available in the future. But missing from these conclusory allegations is any explanation of how Plaintiffs were injured by the unavailability of braille gift cards or any specificity about Plaintiffs' prior visits to Defendants' stores that would support an inference that Plaintiffs intended to return. The United States District Court for the Southern District of New York

(Woods, *J.*) dismissed Plaintiffs' ADA claims for lack of standing and, in the alternative, for failure to state a claim. We affirm because Plaintiffs' conclusory, boilerplate allegations fail to establish standing.

We have held that an ADA plaintiff has suffered an injury in fact when, among other things, "it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [businesses] to plaintiff's home, that plaintiff intended to return to the subject location." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 188 (2d Cir. 2013). But conclusory allegations of intent to return and proximity are not enough—in order to "satisfy the concrete-harm requirement" and to "pursue forward-looking, injunctive relief," Plaintiffs must establish a "material risk of future harm" that is "sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021). Plaintiffs have not done that here. We thus agree with the district court that Plaintiffs lack standing and affirm. We do not reach Plaintiffs' other arguments because standing is a jurisdictional requirement.

# I. BACKGROUND

A.    Factual Background

Plaintiffs Marcos Calcano, Yovanny Dominguez, Braulio Thorne, and James Murphy are visually impaired individuals who rely on braille to read written materials.[1] Defendants Swarovski North America Limited, The Art of Shaving–FL, LLC, Banana Republic, LLC, Jersey Mike's Franchise Systems, Inc., and Kohl's, Inc. are regional or national chains of retail stores that sell gift cards—*i.e.*, pre-paid cash cards that can be used to make purchases at Defendants' locations.[2]

The complaints identically allege that each Plaintiff "telephoned Defendant's customer service office in an attempt to purchase a store gift card from the Defendant and inquired if Defendant sold store gift cards containing Braille." App'x at 101, 166, 286, 350, 416. Plaintiffs were "informed," however, that Defendants "do[] not sell store gift cards containing Braille." *Id.* Moreover, Defendants failed to "offer any alternative auxiliary aids or services . . . with respect to [the] gift cards." *Id.*

---

[1] The following facts are taken from Plaintiffs' amended complaints, filed with the district court prior to dismissal. In reviewing the court's decision on a motion to dismiss for lack of standing, we accept these facts as true and draw all reasonable inferences in Plaintiffs' favor. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016).

[2] Specifically, Calcano sued Swarovski and The Art of Shaving, while Dominguez, Thorne, and Murphy filed complaints, respectively, against Banana Republic, Jersey Mike's, and Kohl's.

Plaintiffs thus allege that they were denied access to Defendants' goods and services, which they assert constitutes discrimination under the ADA. In particular, the complaints maintain that because of "the lack of auxiliary aids" for Defendants' gift cards, Plaintiffs are unable to "ascertain information about the gift card, like the balance, the gift card's terms and conditions of use," nor are they "able to distinguish" Defendants' "branded gift cards from others in the same manner as non-blind persons." *Id.* at 102, 167, 287, 351, 417. Plaintiffs assert that Defendants "failed to provide visually impaired patrons with the particular level of services available to non-disabled patrons." *Id.* In addition, Plaintiffs claim that the "inaccessibility of . . . store gift cards" amounts to "access barriers" that "have caused and continue to cause a denial" of Plaintiffs' "full and equal access, and . . . deter Plaintiff[s] on a regular basis from purchasing, accessing, and utilizing the store gift cards." *Id.* at 106, 171, 291, 355, 421.

Plaintiffs state that they live near their respective Defendants' stores and have been customers "on prior occasions." *Id.* at 102, 167, 287, 351, 417. Plaintiffs also claim that they "intend[] to immediately purchase at least one store gift card from the Defendant[s] as soon as the Defendant[s] sell[] store gift cards that are accessible to the blind." *Id.*

B.      Procedural Background

Plaintiffs' actions—five out of hundreds of substantively identical lawsuits filed in the Southern District of New York in late 2019—were assigned to the same district judge and have a similar procedural history.  Plaintiffs filed amended complaints between February and March of 2020.  All of the amended complaints assert claims under the ADA and related state and local laws, seeking damages, attorneys' fees, and injunctive relief.

Defendants moved to dismiss for lack of standing and failure to state a claim. *See* Fed. R. Civ. P. 12(b)(1), (6).  On April 23, 2020, the district court granted Banana Republic's motion and dismissed Dominguez's complaint. *See Dominguez v. Banana Republic, LLC*, No. 19-cv-10171, -- F. Supp. 3d --, 2020 WL 1950496 (S.D.N.Y. Apr. 23, 2020).  Over the next several days, the district court issued separate orders granting the other Defendants' motions, concluding that the complaints "suffer[ed] from the same pitfalls as those in *Dominguez v. Banana Republic*."  App'x at 126, 312, 376, 538.  Plaintiffs challenge the court's reasoning in its *Dominguez* opinion, which provided the basis for each complaint's dismissal. We therefore summarize that decision to the extent it applies to all Plaintiffs.

7

The court first found that Dominguez failed to establish standing. *See Dominguez*, 2020 WL 1950496, at *4. It explained that an ADA plaintiff has standing to sue for injunctive relief if "it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [services] to plaintiff's home, that plaintiff intended to return to the subject location." *Id.* at *3 (quoting *Kreisler*, 731 F.3d at 187–88 (alteration in original)). Emphasizing the fact-intensive nature of this inquiry, the court determined that the "all-too-generic complaint" did not allege "enough facts to plausibly plead that [Dominguez] intends to 'return' to the place where he encountered the professed discrimination." *Id.* at *4. The court thus concluded that Dominguez "lacks standing to pursue injunctive relief under the ADA" because he failed "to allege any nonconclusory facts of a real or immediate threat of injury." *Id.*

In the alternative, the district court also concluded that the ADA does not require businesses to offer braille gift cards, and thus Dominguez failed to state a claim under the ADA. First, the court determined that "a retailer need not alter the mix of goods that it sells to include accessible goods for the disabled." *Id.* at *7. It found that braille gift cards fit into a category of "special, accessible merchandise" that a place of public accommodation is not required to provide. *Id.*

8

at \*6–\*7.  Second, the court concluded that gift cards are not themselves places of public accommodation because they "fit into none" of the twelve categories included in the ADA's definition of that term and are not "space[s] . . . that can provide the services of a public accommodation."  *Id.* at \*7.  Lastly, the court noted that "[a] public accommodation can choose among various alternative[]"auxiliary aids to offer customers, and Dominguez did not adequately plead that he explored "the range of auxiliary aids and services" Banana Republic provided to the visually impaired.  *Id.* at \*10–\*11.  Finally, the court declined to exercise supplemental jurisdiction over the remaining state- and city-law claims.  *Id.* at \*5, \*12.

The court dismissed the amended complaints without prejudice, allowing Plaintiffs fifteen days to replead.  Plaintiffs did not amend their pleadings, and the district court entered judgment for Defendants.  These appeals followed.[3]

## II. DISCUSSION

Plaintiffs argue that the district court erred both in determining that Plaintiffs lack standing and in finding that Plaintiffs failed to state a claim under the ADA.  We begin with standing because it is a "jurisdictional" requirement and

---

[3] We consolidated the appeals on June 24, 2020.  One of the appealed cases, *Mendez v. AnnTaylor, Inc.*, No. 20-1550, was voluntarily dismissed and severed on July 31, 2020.

"must be assessed before reaching the merits." *Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018).

"We review *de novo* the district court's decision to dismiss a complaint for lack of standing . . . construing the complaint in plaintiff's favor and accepting as true all material factual allegations contained therein." *Katz v. Donna Karan Co.*, 872 F.3d 114, 118 (2d Cir. 2017) (cleaned up).

A.    Legal Principles

Article III of the Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion*, 141 S. Ct. at 2203. "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing." *Id.* (cleaned up).  At all stages of litigation, "the party invoking federal jurisdiction bears the burden of establishing the elements of Article III standing." *Carter*, 822 F.3d at 56 (cleaned up).  "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 141 S. Ct. at 2203.  A plaintiff pursuing injunctive relief may not rely solely on past injury, but also must establish that

10

"she is likely to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016). Such "threatened injury must be *certainly impending* to constitute injury in fact, and . . . allegations of *possible* future injury are not sufficient." *Am. Civ. Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015) (cleaned up).

In the ADA context, we have held that a plaintiff seeking injunctive relief has suffered an injury in fact when: "(1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [businesses] to plaintiff's home, that plaintiff intended to return to the subject location." *Kreisler*, 731 F.3d at 187–88. These considerations may assist courts in determining whether an alleged prospective injury is sufficiently "concrete and particularized." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).[4] In particular, the focus of the third factor—*i.e.*, intent to return based on past visits and proximity—is to ensure that "the risk of

---

[4] In *Kreisler*, we held that "deterrence constitutes an injury under the ADA." 731 F.3d at 188 (citing *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137–38 (9th Cir. 2002)). A plaintiff "need not attempt to overcome an obvious barrier" to allege an injury in fact, which in some cases could result in physical harm. *Id.* This is consistent with the ADA's remedy provision, which provides that "[n]othing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization . . . does not intend to comply with [Title III of the ADA's] provisions." 42 U.S.C. § 12188(a)(1).

11

harm is sufficiently imminent and substantial" to establish standing. *TransUnion*, 141 S. Ct. at 2210. Thus, the central inquiry is not whether a complaint pleads the magic words that a plaintiff "intends to return," but if, "examined under the 'totality of all relevant facts,'" the plaintiff plausibly alleges "a real and immediate threat of future injury." *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1233 (11th Cir. 2021) (including "definiteness of the plaintiff's plan to return" and "frequency of the plaintiff's travel near the defendant's business" as factors to consider in assessing whether a plaintiff "faces a real and immediate threat of future injury" (cleaned up)).[5]

Although we generally accept the truth of a plaintiff's allegations at the motion to dismiss stage, the plaintiff still "bears the burden of alleging facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*, 790 F.3d 411, 417 (2d Cir. 2015) (cleaned up); *see also Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 148 (2d Cir. 2011) ("[F]or [a plaintiff] to have standing to sue, its alleged injury in

---

[5] The concurrence claims that the majority opinion has added a new "intent-to-return prong as a necessary element of standing," which "erect[s] an[] additional requirement that disabled individuals must meet to have standing." Concurrence at 3. But intent to return is neither new nor is it an additional requirement—it is how our Court has determined whether a plaintiff has demonstrated a likelihood of future injury for injunctive relief. *See supra* at 11–12.

fact must be plausible."). Assessing plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). We need not credit "a legal conclusion couched as a factual allegation" or a "naked assertion devoid of further factual enhancement." *Id.* at 678 (cleaned up). Instead, we must refer to a complaint's "factual context" to discern whether to accept "a complaint's conclusory statements." *Amidax Trading Grp.*, 671 F.3d at 146 (quoting *Iqbal*, 556 U.S. at 686).

B.     Analysis

Plaintiffs challenge the district court's conclusion that their amended complaints do not plausibly demonstrate their intent to return to Defendants' stores if braille gift cards were available. Plaintiffs claim that the district court should have accepted as true the allegations that each "Plaintiff has been a customer at Defendant's [business] on prior occasions and intends to immediately purchase at least one store gift card from the Defendant as soon as the Defendant sells store gift cards that are accessible to the blind." App'x at 102, 167, 287, 351, 417. Plaintiffs also rely on their allegations that they reside in "close proximity" to

13

Defendants' stores. *Id.* at 103, 168, 288, 352, 418. We agree with the district court that these allegations fail to establish standing.

First, Plaintiffs' conclusory invocations of the factors we found relevant in *Kreisler* are insufficient to establish standing. In *Kreisler*, we identified several categories of information that could be helpful in determining whether "it was reasonable to infer . . . that plaintiff intended to return to the subject location." 731 F.3d at 188. Kreisler, the plaintiff in that case, "live[d] within several blocks of the Diner," "passe[d] by it three to four times a week," and "frequent[ed] diners in his neighborhood often." *Id.* at 186, 188. These facts "show[ed] a plausible intention to return to the Diner," *id.* at 188, which established a "sufficiently imminent and substantial" "risk of harm." *TransUnion*, 141 S. Ct. at 2210.

Here, each Plaintiff pleads the identical assertion that he resides "in close proximity to" Defendants' businesses, has been a "customer at Defendant's [location] on prior occasions," and "intends to immediately purchase at least one store gift card from the Defendant as soon as the Defendant sells store gift cards that are accessible to the blind." App'x at 102–03, 167–68, 287–88, 351–52, 417–18. These allegations parrot the court's language in *Kreisler*, *see* 731 F.3d at 188, and Plaintiffs characterize them as factual assertions that we must presume as true.

But these assertions are nothing more than "legal conclusion[s] couched as . . . factual allegation[s]." *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see also Baur v. Veneman*, 352 F.3d 625, 636–37 (2d Cir. 2003) (explaining that "[w]hile the standard for reviewing standing at the pleading stage is lenient," a plaintiff may not "rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing"). Plaintiffs' threadbare assertions are conclusory and do not raise a reasonable inference of injury.

Second, Plaintiffs' assertions of proximity and prior visits are vague, lacking in support, and do not plausibly establish that Plaintiffs "intended to return to the subject location." *Kreisler*, 731 F.3d at 188.

As an initial matter, the district court did not err in dismissing Murphy's amended complaint for lack of standing. Murphy alleges that he "resides on W. 23rd Street, New York, NY, on the same street and less than a block from [the Kohl's] retail store at 271 W. 23rd St, New York, NY." App'x at 417. But there is no Kohl's store anywhere in Manhattan, let alone at that address.[6] Murphy thus lacks standing.

---

[6] Murphy concedes that Kohl's never operated a store at that address, describing this as "an error . . . regarding the location." Appellants' Reply Br. at 10 n.3.

15

As to the remaining Plaintiffs, only Calcano—in his suit against The Art of Shaving—provides an accurate address for a Defendant's business, stating that he lives "in Bronx, NY, and close to Defendant's retail store located at 10 Columbus Circle, New York, NY." *Id.* at 351.[7] But depending on where Calcano lives in the Bronx, which the complaint does not say, that address could be up to an hour away from The Art of Shaving store at Columbus Circle.[8] Standing on its own, this bare allegation of so-called "proximity" hardly supports an inference that Calcano, who is blind, would "immediately" make this inter-borough trip just to purchase braille gift cards from The Art of Shaving at Columbus Circle.

Nor do Plaintiffs' vague assertions that they have been customers at Defendants' businesses "on prior occasions," *see, e.g.*, *id.* at 102, nudge their claims "across the line from conceivable to plausible," *Iqbal*, 556 U.S. at 680 (citation omitted). Calcano, Dominguez, and Thorne fail to provide *any* details about their past visits or the frequency of such visits. They do not specify which stores they visited or what items they purchased. And they do not say why they want to

---

[7] Neither Calcano nor Dominguez provides an address for Swarovski and Banana Republic, respectively, stating only that they "reside[] within close proximity to at least one of Defendant's physical locations." App'x at 103, 168. And Thorne alleges only that the Jersey Mike's he wishes to visit is located in the Bronx.

[8] *See* Google Maps, https://www.google.com/maps/ (using Bronx, NY as the starting point and 10 Columbus Circle, New York, NY as the destination).

purchase braille gift cards—for their own use or as gifts—so urgently that they intend to do so "immediately . . . as soon as the Defendant[s] sell[] store gift cards that are accessible to the blind."  App'x at 102, 167, 287, 351.  Without such basic information, Plaintiffs cannot possibly show that they have suffered an injury that is "concrete and particularized."[9]  *Lujan*, 504 U.S. at 560.

Third, we cannot ignore the broader context of Plaintiffs' transparent cut-and-paste and fill-in-the-blank pleadings.  The four Plaintiffs before us filed eighty-one of over 200 essentially carbon-copy complaints between October and December 2019.  All of the complaints use identical language to state the same conclusory allegations.  Of the roughly 6,300 words in Calcano's complaint against Swarovski, for example, only 26 words—consisting of party names, dates, and Defendants' office addresses and states of incorporation—are different from Dominguez's complaint against Banana Republic.  They even contain the same

---

[9] To the extent Plaintiffs fault the district court for declining to hold a factual hearing, there was no need to do so when, as here, the court granted leave to amend.  *See Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("[I]t is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing.").  Moreover, Plaintiffs refused the district court's invitation to "cure the deficiencies articulated" in the orders by "alleging additional facts about the interactions" they had with Defendants.  App'x at 128, 211, 315, 379, 541.

typos. *See, e.g.*, App'x at 105, 169, 289, 353, 419 (same missing space between the period and "Gift" in Paragraph 35).

This backdrop of Plaintiffs' Mad-Libs-style complaints further confirms the implausibility of their claims of injury. As noted above, Murphy asserts that he would return to a Kohl's that doesn't exist. *See supra* at 15. Dominguez seeks to go back to Banana Republic for its food.[10] Thorne doesn't even allege where he lives, making an assessment of proximity to a Jersey Mike's impossible.[11] Calcano plans to travel from somewhere in the Bronx to Columbus Circle for a shaving supply gift card. And all of these plans depend on the availability of braille gift cards even though Plaintiffs never explain why they want those cards in the first place. Although we might excuse a stray technical error or even credit an odd allegation standing alone as an idiosyncratic preference—to do so here in light of the cumulative implausibility of Plaintiffs' allegations would be burying our heads in the sand. "[J]udicial experience and common sense" suggest that the errors,

---

[10] In the district court, Dominguez repeatedly stated that Banana Republic's "primary business is selling food." *See* Mem. of Law in Opp. to Def.'s Motion to Dismiss at 3, 15, 16, 20, *Dominguez v. Banana Republic, LLC*, No. 19-cv-10171.

[11] The concurrence would fill in this blank by purporting to take judicial notice of Thorne's alleged residence in Chelsea from the allegations in another lawsuit. Concurrence at 8 n.3. This questionable invocation of judicial notice only highlights the deficiencies in Thorne's complaint. *See* Fed. R. Evid. 201(b) (a court may take judicial notice of a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

oddities, and omissions in the complaints are a result of their mass production, and they render each Plaintiff's cookie-cutter assertion of standing implausible. *Iqbal*, 556 U.S. at 679.

In sum, Plaintiffs have offered only "naked assertions" of intent to return to Defendants' stores if they offer braille gift cards. *Id*. at 678. This reliance on a mere "profession of an intent to return to the places" previously visited is "not enough" to establish standing for prospective relief. *Lujan*, 504 U.S. at 564 (cleaned up). Without any factual support for their conclusory claims, Plaintiffs have failed to establish a "real and immediate threat of repeated injury." *Kreisler*, 731 F.3d at 187 (citation omitted). We thus agree with the district court that Plaintiffs failed to establish standing.[12]

## III. CONCLUSION

For the reasons described above, the district court did not err in dismissing Plaintiffs' amended complaints for lack of standing. We also find that the district court acted within its discretion in declining to exercise supplemental jurisdiction

---

[12] In light of our determination on standing, we do not reach Plaintiffs' arguments as to whether their complaints state an ADA claim. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998).

over Plaintiffs' state and local law claims. *See Giordano v. City of New York,* 274 F.3d 740, 754 (2d Cir. 2001). We thus affirm the district court's judgments.

LOHIER, *Circuit Judge*, concurring in the judgment:

In the instant appeals, plaintiffs-appellants Marcos Calcano, Yovanny Dominguez, Braulio Thorne, and James Murphy—legally blind individuals who require aids such as Braille to read written materials—claim that they have been denied meaningful use of the gift cards sold by defendants-appellees Swarovski North America Limited ("Swarovski"), Banana Republic, LLC ("Banana Republic"), Jersey Mike's Franchise Systems, Inc. ("Jersey Mike's"), The Art of Shaving–FL, LLC ("Art of Shaving"), and Kohl's, Inc. ("Kohl's"), because these gift cards are not embossed with Braille. The District Court dismissed all five actions for lack of standing and, alternatively, for failure to state a claim under Title III of the Americans with Disabilities Act (ADA). My colleagues in the majority affirm on the ground that the plaintiffs lack standing. I disagree. If Title III of the ADA is to mean anything at all, then the disabled plaintiffs in these actions (except the plaintiff in Kohl's) surely have standing to sue. Because I agree with the District Court's alternative ruling that the complaints fail to state a cause of action under the ADA, however, I concur in the judgment.

Let me first address standing, followed by the merits of the ADA claims as alleged in the plaintiffs' complaints.

1

**A.** <u>Standing</u>

In <u>Camarillo v. Carrols Corp.</u>, 518 F.3d 153 (2d Cir. 2008), and <u>Kreisler v. Second Avenue Diner Corp.</u>, 731 F.3d 184 (2d Cir. 2013), we held that a plaintiff has adequately alleged standing "[i]n the ADA context . . . where (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [establishment] to plaintiff's home, that plaintiff intended to return to the subject location." <u>Kreisler</u>, 731 F.3d at 187–88. Until today, we have never suggested that these three prongs are <u>necessary</u> for Article III standing in the ADA context. Instead, we have held that satisfying these prongs had been <u>sufficient</u> in the past. In other words, they serve as a helpful guide in determining whether the plaintiffs have standing in this case, not as elements for standing in ADA cases.

In my view, contrary to the majority's, a plaintiff in an ADA case is ultimately required to satisfy only the three well-established requirements for Article III standing: (1) an injury in fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely that the

2

injury will be redressed by a favorable decision.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992).  At most, the factors we identified in Kreisler and Camarillo shed light on whether a plaintiff seeking injunctive relief has shown "a likelihood that he will be injured in the future."  Shain v. Ellison, 356 F.3d 211, 215 (2d Cir. 2004) (quotation marks and alteration omitted); see City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983).  They do not impose any additional standing requirements in ADA cases.[1]

Unfortunately, the majority opinion has ignored this.  Interpreting the intent-to-return prong as a necessary element of standing, it holds that the plaintiffs in this case lack standing to pursue their ADA claims.  At a practical level, doing so creates more (needless) problems than it solves in the ADA context.  But setting aside the practical implications of the majority's holding, I write separately to emphasize that there is no basis to erect any additional requirement that disabled individuals must meet to have standing to sue under Title III of the ADA.  Let me explain why.

---

[1] Importantly, both Kreisler and Camarillo involved claims under Title III of the ADA, which prevents a private individual from recovering monetary damages.  42 U.S.C. § 12188(a)(1).  Neither decision sheds light on the requirements for Article III standing in cases where a plaintiff seeks monetary damages under Title II of the ADA, which prohibits discrimination by a public entity against a qualified individual with a disability in the benefits or activities of the public entity.

3

First, a bit of history. We borrowed the "intent-to-return" analysis from the Ninth Circuit's decision in Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133 (9th Cir. 2002). See Camarillo, 518 F.3d at 158 (citing Pickern). Unlike my colleagues in the majority, however, the Ninth Circuit explicitly declined to apply that analysis strictly and dispositively to conclude that a disabled individual has no standing to even claim a violation of the ADA. The Ninth Circuit instead concluded that "a disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA has suffered 'actual injury.' Similarly, a plaintiff who is threatened with harm in the future because of existing or imminently threatened non-compliance with the ADA suffers 'imminent injury.'" Pickern, 293 F.3d at 1138.

Second, as Pickern points out, a disabled individual has standing if they are deterred from returning to a noncompliant facility, without reference to the plaintiff's intent to return. Since Pickern, the Ninth Circuit has reaffirmed this view in Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939 (9th Cir. 2011), holding that "an ADA plaintiff can establish standing to sue for injunctive relief . . . by demonstrating deterrence." Id. at 944; see also id. at 950 (discussing

4

Pickern and noting that "we have Article III jurisdiction to entertain requests for injunctive relief both to halt the deterrent effect of a noncompliant accommodation and to prevent imminent 'discrimination,' as defined by the ADA, against a disabled individual who plans to visit a noncompliant accommodation in the future."). The practical reality is that in too many cases individuals with disabilities realize that they cannot return to an inaccessible facility (a store, a restaurant, etc.). There is no need for a disabled person who has previously attempted to access such a facility to show an intent to return if doing so would be futile or even to show that she intended do so if she were able to access it. In no other area of civil rights law do we impose a similar requirement to establish standing. Congress recognized as much when, for example, it refused to require people with disabilities to engage in "futile gesture[s]" in its remedy provision. 42 U.S.C. § 12188(a)(1). The majority seems to agree with this in theory, Majority Op. at 11 n.4, although its reasoning today suggests otherwise.

With that context in place, I submit that all of the plaintiffs except the plaintiff in Kohl's[2] established that they have standing. As we said in Kreisler,

---

[2] The plaintiff in Kohl's alleges that he "resides on W. 23rd Street, New York, NY, on the same street and less than a block from Defendant's retail store at 271 W. 23rd St, New

5

one way a plaintiff can establish standing is by alleging facts that lead to a reasonable inference that "plaintiff intended to return to the subject location." Kreisler, 731 F.3d at 188.  In assessing a plausible intent to return in the ADA context, we have considered factors such as, for example, the frequency of a plaintiff's visits to a defendant's store, the proximity of a plaintiff's residence or work to the store in question, and a plaintiff's demonstrated travel habits.  See id.; see also Bernstein v. City of New York, 621 F. App'x 56, 58–59 (2d Cir. 2015).

Keeping these factors in mind, and even assuming that plaintiffs must allege an intent to return, the complaints in Swarovski, Banana Republic, Jersey Mike's, and Art of Shaving have adequately alleged such an intent.  They allege that (1) each plaintiff "has been a customer at [his respective defendant's store or restaurant] on prior occasions," (2) each plaintiff "resides within close proximity to at least one of [his respective defendant's] physical locations," and (3) each plaintiff "intends to immediately purchase at least one store gift card from [his respective defendant] as soon as [that defendant] sells store gift cards that are

York, NY."  Joint App'x 417.  At oral argument, however, counsel conceded that this allegation was mistaken, and that no Kohl's store exists at that address or anywhere in Manhattan.  I therefore agree with the majority that the plaintiff in Kohl's relies on an inaccuracy about his proximity to Kohl's that negates injury-in-fact, and I therefore also agree with the majority that we should affirm the dismissal of Kohl's for lack of standing.

6

accessible to the blind and utilize it at [that defendant's business]." Joint App'x 102–03, 167–68, 287, 351, 417. Because the defendants have advanced a facial challenge to the plaintiffs' standing, we accept as true all material facts alleged in the complaints and draw all reasonable inferences in the plaintiffs' favor. See Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.à.r.l., 790 F.3d 411, 417 (2d Cir. 2015). Accordingly, unless factually contradicted (as in Kohl's, as discussed), we accept as true the plaintiffs' allegations that they live near at least one of the defendants' businesses.

To start, all the plaintiffs allege that they have previously visited the store or restaurant at issue and that it was inaccessible. Such an allegation makes it plausible to infer that they intend to visit again. The plaintiffs also allege that they live sufficiently close to the facilities they claim violated their rights under the ADA that it is plausible they would visit again. Calcano and Dominguez, for example, allege that they live in the Bronx, which, in my view, is close enough to establish their proximity to various Swarovski and Banana Republic stores located in the Bronx and Manhattan. See Camarillo, 518 F.3d at 155, 158 (noting that plaintiff's residence in Catskill, New York is proximate to defendants' restaurants in Catskill, Hudson, Cairo, and Kingston, New York). Likewise,

7

Calcano's home in the Bronx and Thorne's in "New York, NY"[3] are all located in the same metropolitan area and are thus close enough to the Art of Shaving store in Manhattan and to Jersey Mike's restaurant in the Bronx, respectively, to make it plausible that they will shop there again.

Taken together, these allegations "tend to show" in each case that, but for the defendants' misconduct, "the plaintiff will likely frequent the area where the public accommodation is located and is interested in what it has to offer." Hirsch v. Campaniello Soho, Inc., No. 14-cv-5097, 2015 WL 678662, at *3 (S.D.N.Y. Feb. 17, 2015); see Friends of the Earth, Inc. v. Laidlaw Env't Servs., 528 U.S. 167, 184 (2000).

Consider Thorne's assertion that he would return to Jersey Mike's in the Bronx. The majority contends it is "impossible" to assess Thorne's proximity to the restaurant because he "doesn't even allege where he lives." Majority Op. at 18. To the contrary, Thorne specifically alleges that he lives in New York, New York (Manhattan), which, as every New Yorker knows, borders the Bronx. Joint

---

[3] Although Thorne does not specify where in "New York, NY" he lives, Joint App'x 223, in a separate ADA action he alleged that he lived less than a block from a Boston Market restaurant at 271 West 23rd St., New York, NY, see Thorne v. Boston Mkt. Corp., 469 F. Supp. 3d 130, 133 (S.D.N.Y. 2020). I would take judicial notice of this uncontested factual allegation. See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

8

App'x 223. To the extent that the majority demands a more specific address, to show how close he lives to Jersey Mike's, it confuses Rule 12(b)(6)'s plausibility standard for a "probability requirement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (noting that "[t]he plausibility standard is not akin to a 'probability requirement[.]'"). Neither our Court nor the Supreme Court has "require[d] the pleading of specific evidence or extra facts beyond what is needed to make [a] claim plausible." Arista Records, LLC v. Doe 3, 604 F.3d 110, 120–21 (2d Cir. 2010).

The majority's error continues in Art of Shaving, where it finds it implausible that Calcano might travel "up to an hour" to purchase shaving supplies. Majority Op. at 16. But if Calcano sought products sold only in that store, it is hardly implausible that he might again travel to attend his store of choice. See Camarillo, 518 F.3d at 155, 158. And the majority cannot reconcile its observation that such a trip would be implausible with Camarillo, where we found it altogether plausible that the plaintiff would travel approximately 28 miles (from Catskill to Kingston, New York) to patronize a fast-food restaurant. See id.

The majority's approach to the core allegations in these cases is improper.

Article III contains none of the requirements that the majority imposes in this case. In defense of its approach, the majority resorts to "judicial experience and common sense." Majority Op. at 13 (quoting Iqbal, 556 U.S. at 679). I agree that "judicial experience and common sense" can help us assess the plausibility of factual allegations, including allegations relevant to standing. But there is no basis to doubt the sincerity of plaintiffs' assertions, other than by reference to one's own subjective tastes or preferences. In second-guessing the plaintiffs' preferences, my colleagues go too far. Describing with evident distaste the plaintiffs' history of litigation and status as repeat filers of ADA suits, they rely not so much on experience or common sense as suspicion about the plaintiffs' motives for suing. The majority believes that the plaintiffs' litigation history or motive for bringing these lawsuits weakens their claims of future injury, strips them of their standing to sue, or otherwise bears on whether their claims meet the requirements of Article III standing.[4] What the majority derides as "burying our heads in the sand," Majority Op. at 18, is in fact an exercise in judicial

---

[4] The majority's reference to the "cumulative implausibility" of the plaintiffs' allegations is especially curious. Majority Op. at 18. These are different plaintiffs who filed different complaints against different defendants. That we heard these appeals in tandem does not mean that we can now evaluate the plausibility of the plaintiffs' complaints at the group level rather than individually.

10

restraint.

More broadly, the majority's reasoning has nothing to do with Article III, and its its view runs headlong into the text, history, and purpose of the ADA. "In enacting the ADA, Congress recognized that we live in a 'society [that] has tended to isolate and segregate individuals with disabilities.'" Nanni v. Aberdeen Marketplace, Inc., 878 F.3d 447, 453 (4th Cir. 2017) (quoting 42 U.S.C. § 12101). "Such individuals 'continually encounter various forms of discrimination, including outright intentional exclusion' as a result of various barriers to access." Id. (quoting 42 U.S.C. § 12101). It is against this backdrop of discrimination and ostracism that "Congress concluded that there was a compelling need for a clear and comprehensive national mandate to eliminate" all kinds of discrimination against disabled individuals, including "outright intentional exclusion" and "failure to make modifications to existing facilities and practices." PGA Tour, Inc. v. Martin, 532 U.S. 661, 675 (2001) (quotation marks omitted). Private litigation is one linchpin in achieving broad compliance with the ADA. For this reason, among others, Title III of the ADA does not limit claims to "bona fide" customers[5] (although it is worth recalling that each of the

---

[5] The majority deems the plaintiffs' allegations of future injury "implausible" largely because so many nearly identical cases have been filed in district courts in our Circuit.

11

plaintiffs here is indisputably blind), and the statute instead guarantees the right to be "free from disability discrimination" regardless of "[the plaintiff's] motive." Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1332–34 (11th Cir. 2013).

Applying the correct approach—and assuming again for the sake of argument that Kreisler requires that an ADA plaintiff plausibly allege a past injury at a particular location, coupled with an intent to return to that location, in order to demonstrate a likelihood of future injury as a basis for equitable relief— the complaints here plausibly allege both the plaintiffs' past injuries at particular noncompliant facilities and their intent to return to those facilities. The plaintiffs have accordingly established their standing to sue for equitable relief.

Whether the complaints state a claim under Title III or instead expose the plaintiffs' cases as less than meritorious is what I turn to next.

### B. Failure to State a Claim Under the ADA

"To state a claim under Title III, [a plaintiff] must allege (1) that she is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated

---

Majority Op. at 19. Not even the defendants advanced this as their central position. Nor am I aware of any prior example where this Court has rejected otherwise well-pleaded allegations at the motion to dismiss stage because they parrot allegations in unrelated cases.

against her by denying her a full and equal opportunity to enjoy the services defendants provide." Camarillo, 518 F.3d at 156. Only the last element is in dispute. As to that element, Title III provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). The statute further defines discrimination to include, among other things:

> a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden[.]

Id. § 12182(b)(2)(A)(iii). Regulations promulgated under these provisions by the United States Department of Justice ("DOJ") provide that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1).

To discern whether these provisions require the defendants to provide gift cards with Braille, we must first determine how to conceptualize gift cards. As

13

relevant here, there are three possible options that are not mutually exclusive.

First, gift cards may be deemed "goods" that are sold in places of public accommodation. As explained in more detail below, the ADA does not regulate what types of good and services should be made available, just as a bookstore need not sell Brailled versions of every book it sells. Accordingly, under this view of gift cards, the defendants need not provide Brailled gift cards. Second, gift cards may be considered a means by which customers may access other goods and services sold by the defendants, in which case the ADA—which prohibits a place of public accommodation from discriminating on the basis of disability when providing access to its goods and services—would extend to gift cards. Third, gift cards themselves may qualify as "place[s] of public accommodation," in which case they must be accessible to blind individuals under 42 U.S.C. § 12812(a).

The District Court adopted the first view, while rejecting the second and third views. The District Court properly determined that gift cards are goods in themselves and that they are not places of public accommodation. In my view, however, the District Court erred when it opted not to consider gift cards as a means by which to access goods and services, from which it concluded that they

14

are exempt from the ADA's accessibility requirement. Nevertheless, I would affirm the District Court's dismissal of the complaints because the plaintiffs do not plausibly and adequately allege that the defendants denied them adequate auxiliary aids and services by failing to provide Brailled gift cards.

**1. Gift Cards as Means of Access to Goods or Services**

The plaintiffs argue that, even if gift cards themselves were not places of public accommodation, they would still fall within the ambit of Title III because they are means by which the plaintiffs would access or acquire the defendants' other goods and services. I agree.

To begin with, Title III of the ADA prohibits a place of public accommodation from discriminating on the basis of disability when providing access to its goods and services, but not to regulate what types of goods and services should be made available. See Weyer v. Twentieth Century Fox Film Corp., 198 F.3d 1104, 1115 (9th Cir. 2000) (noting that the ADA "does not require provision of different goods or services, just nondiscriminatory enjoyment of those that are provided"); McNeil v. Time Ins. Co., 205 F.3d 179, 188 (5th Cir. 2000). And the DOJ's implementing regulations likewise state that the ADA "does not require a public accommodation to alter its inventory to include

15

accessible or special goods that are designed for, or facilitate use by, individuals with disabilities." 28 C.F.R. § 36.307(a); id. pt. 36, app. C ("The purpose of the ADA's public accommodations requirements is to ensure accessibility to the goods offered by a public accommodation, not to alter the nature or mix of goods that the public accommodation has typically provided.").

The district court applied the above logic to hold that, because gift cards are goods in themselves, the ADA does not require the defendants to modify and provide gift cards in accessible forms to blind individuals, just as a bookstore need not ensure that the books it sells are available in both Braille and standard print. See id. § 36.307(c) (singling out "Brailled versions of books" as a specific example of accessible or special goods that public accommodations need not ordinarily make available). Indeed, while the ADA itself does not define "goods," gift cards—items in the defendants' inventory to be sold—clearly comport with an ordinary and common meaning of that term. See Goods, Oxford English Dictionary (3d ed. 2014) (defining "goods" as "things that are produced for sale; commodities and manufactured items to be bought and sold; merchandise, wares" and "economic assets which have a tangible, physical form").

16

While I may agree that gift cards are types of goods, that does not mean that gift cards may not also be a means by which customers access other goods and services within the meaning of Title III. Gift cards, types of prepaid debit cards, are a purchase mechanism that the defendants provide for the convenience of customers so that they can purchase other goods and services offered by the defendants. Although gift cards may not be generally accepted as a "universal medium" of exchange, Am. Council of the Blind v. Paulson, 525 F.3d 1256, 1268 (D.C. Cir. 2008) (quotation marks omitted), they need not be as fungible as cash, debit cards, or other money instruments to qualify as means of access to the defendants' goods and services. Moreover, it is irrelevant that the plaintiffs have other means of accessing the defendant's goods and services, such as cash or credit cards, because there may be privacy, security, or budgetary reasons for using gift cards rather than those other payment methods. In arriving at this conclusion, I am guided by the principle that, "[a]s a remedial statute, the ADA must be broadly construed to effectuate its purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." Noel v. N.Y.C. Taxi and Limousine Comm'n, 687 F.3d 63, 68 (2d Cir. 2012) (quotation marks omitted).

Because gift cards qualify as means of access to goods and services offered by the defendants and therefore fall within the ambit of Title III, public accommodations must ensure that, with respect to the use of gift cards to access other goods and services, no blind individual is "excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."  42 U.S.C. § 12182(b)(2)(A)(iii).

## 2.  Failure To Provide Auxiliary Aids and Services

Because the ADA allows for the defendants to provide auxiliary aids and services of their choice, the plaintiffs must adequately allege that Braille is the only type of ADA-compliant auxiliary aid or service in this context or that the defendants do not offer any auxiliary aid or service, including Braille.  And because the plaintiffs did neither, the dismissal of their complaints was proper. Thus, although I believe that all but one of the plaintiffs have standing and that

gift cards fall within the ambit of the ADA, I would affirm the dismissal of the complaints.

First, that gift cards qualify as means of access to goods and services does not mean that the lack of Braille on gift cards necessarily constitutes an ADA violation, since there may be other auxiliary aids and services available to assist blind individuals with using gift cards. Indeed, the statutory definition of auxiliary aids and services includes "qualified readers, taped texts, or other effective methods of making visually delivered materials available to individuals with visual impairments" and "other similar services and actions." Id. § 12103(1); see also 28 C.F.R. § 36.303(b)(2) (listing the same, plus "audio recordings," "Brailled materials and displays," "accessible electronic and information technology," and more). Braille is thus just one among many types of auxiliary aids and services.

The ADA leaves it up to merchants to decide what particular auxiliary aids and services they would offer to disabled individuals, given the context-dependent nature of what constitutes effective communication. See id. § 36.303(c)(1)(ii) ("A public accommodation should consult with individuals with disabilities whenever possible to determine what type of auxiliary aid is needed

19

to ensure effective communication, but the ultimate decision as to what measures to take rests with the public accommodation, provided that the method chosen results in effective communication."). For example, "a clothing boutique would not be required to have Brailled price tags if sales personnel provide price information orally upon request." 28 C.F.R. pt. 36, app. C; see also Camarillo, 518 F.3d at 157 (explaining that restaurants are not required to provide large print menus so long as they ensure the menu is effectively communicated). Accordingly, "[n]othing in the ADA itself or its implementing regulations dictates that a disabled individual must be provided with the type of auxiliary aid or service he requests." Burkhart v. Washington Metro. Area Transit Auth., 112 F.3d 1207, 1213 (D.C. Cir. 1997) (emphasis in original).

Based on the above, the District Court held that alleging the absence of Braille on gift cards is not tantamount to alleging that the defendants failed to provide any auxiliary aids and services. In asking this Court to reverse that holding, the plaintiffs argue that (1) Braille is the only type of ADA-compliant auxiliary aid or service in a gift card context, and (2) even if that were not the case, the defendants did not offer any other auxiliary aids and services. I am not persuaded by these arguments, as they are neither adequately nor plausibly

pleaded.

With respect to the first argument, the complaints are devoid of any plausible allegation as to why other types of auxiliary aids and services—such as store clerks' assistance—would not permit the plaintiffs to enjoy the benefits of gift cards. The plaintiffs respond that only Braille, among all potential auxiliary aids and services in this context, would satisfy federal and state laws mandating that gift cards contain written disclosures such as: an expiration date; information regarding a dormancy, inactivity, or service fee; a toll-free number and a website to obtain information about the card; whether the card is subject to a replacement fee; and other terms and conditions. See, e.g., 15 U.S.C. § 1693l-1(b)(3), (c)(2)(B); 12 C.F.R. § 205.20(c)(4), (d)(2), (e)(3); N.Y. Gen. Bus. Law § 396-i(3). These consumer protection laws do not interact with the ADA in such a way that the required disclosures must necessarily be made in Braille, in addition to regular print. Rather, these laws collectively appear to require that the defendants effectively communicate the information required to be disclosed via an adequate auxiliary aid or service of their choice. Here, the plaintiffs do not allege that other auxiliary aids and services, such as employee assistance, are ineffective means of communicating the required information to blind

21

individuals. The plaintiffs have failed to make the necessary allegations here.

Alternatively, the plaintiffs argue that, even if Braille were not the only type of ADA-compliant auxiliary aid or service, the defendants do not offer other aids or services that might enable blind customers to use gift cards. Although, in my view, such an allegation might have saved the complaints, the plaintiffs do not adequately allege this anywhere, and we cannot plausibly infer from the allegations that they do make that the plaintiffs were <u>denied</u> other types of auxiliary aids or services. <u>See</u>, <u>e.g.</u>, Joint App'x 416 (alleging that defendant's employee "did not <u>offer</u> any alternative auxiliary aids or services" on the phone when informing the plaintiff that Braille gift cards were unavailable (emphasis added)). For instance, the complaints could have alleged that the plaintiffs asked the defendants' employees about the availability of other auxiliary aids or services, or that the plaintiffs took other steps to find out what other auxiliary aids or services might have been available. But none of these are alleged.[6]

As a fallback, plaintiffs allege that, "[u]pon information and belief, [the defendants] do[] not offer auxiliary aids with respect to the gift cards." Joint

---

[6] For substantially the same reason, I would reject the plaintiffs' assertion that they were denied full enjoyment of the gift cards from their homes because of the lack of Braille. The plaintiffs do not allege that they asked the defendants what kinds of auxiliary aids or services would be available for their desired use online or over the phone.

App'x 102, 167, 286, 350, 417. This conclusory allegation is not sufficient to overcome the shortcoming just identified. "A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory. Those magic words will only make otherwise unsupported claims plausible when the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." Citizens United v. Schneiderman, 882 F.3d 374, 384–85 (2d Cir. 2018) (quotation marks omitted); see also Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 146 (2d Cir. 2011) ("It is well established that we need not credit a complaint's conclusory statements without reference to its factual context." (quotation marks omitted)). Here, the plaintiffs could have simply inquired a bit further to discern the availability of other auxiliary aids and services, the fact of which is not peculiarly within the possession and control of the defendants.[7]

---

[7] Because, in my view, the plaintiffs' federal law claims were properly dismissed, I do not fault the District Court for refusing to exercise supplemental jurisdiction over the plaintiffs' state and local law claims without prejudice to refiling in state court. See 28 U.S.C. § 1367(c)(3); Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003).

**CONCLUSION**

To summarize, I would conclude that, contrary to the majority's holding, all plaintiffs other than the Kohl's plaintiff have established standing; that gift cards are not only goods but also means of access to goods and services under Title III of the ADA, such that places of public accommodation must provide adequate auxiliary aids and services to ensure that blind customers can make meaningful use of gift cards, unless doing so would fundamentally alter the nature of goods and services provided or would result in an undue burden; and the plaintiffs have not adequately alleged that the defendants failed to provide them with ADA-compliant auxiliary aids and services in connection with their desired use of gift cards.

For these reasons I respectfully concur in the judgment.

24