23-209
*Moncho v. Fifth Third Bank, N.A.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.
CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007,
IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE
PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING
A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY
MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC
DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY
CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY
PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of October, two thousand twenty-three.

PRESENT:

> PIERRE N. LEVAL,
> BARRINGTON D. PARKER,
> SARAH A. L. MERRIAM,
> *Circuit Judges.*

_____

FEDERAL DEPOSIT INSURANCE
CORPORATION, AS RECEIVER FOR
BROADWAY BANK *ex rel.* LEE
MONCHO,

> *Plaintiff-Appellant*,

FEDERAL DEPOSIT INSURANCE
CORPORATION, AS RECEIVER FOR
BROADWAY BANK,

> *Plaintiff*,

> v.                                                           No. 23-209-cv

FIFTH THIRD BANK, N.A., AS SUCCESSOR
IN INTEREST TO MB FINANCIAL BANK,
N.A.,

        *Defendant-Appellee,*

MB FINANCIAL BANK, N.A.,

        *Defendant.*[*]

_____

| | |
|---|---|
| **For Plaintiff-Appellant:** | JOSHUA H. EPSTEIN, Davis + Gilbert LLP, New York, NY. |
| **For Defendant-Appellee:** | MICHAEL J. BRONSON, Dinsmore & Shohl LLP, Cincinnati, OH (Laurie A. Witek, Dinsmore & Shohl LLP, Cincinnati, OH; Nathan Schwed, Zeichner Ellman & Krause LLP, New York, NY, *on the brief*). |

Appeal from a judgment of the United States District Court for the Southern District of New York (Daniels, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED**.

Plaintiff-appellant Lee Moncho ("Moncho") appeals from the judgment of the District Court (Daniels, J.), dismissing his qui tam action filed under the False Claims Act ("FCA") against MB Financial Bank ("MB").[1] We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, and recite them herein

---

[*] The Clerk of Court is respectfully directed to amend the case caption as set forth above.

[1] On March 22, 2019, defendant-appellee Fifth Third Bank, N.A. acquired MB, becoming its successor in interest in this action. Because Moncho's factual allegations involve MB's conduct, the Court refers to MB throughout this Order.

only as necessary.

In April 2010, MB purchased a portfolio of loans from the Federal Deposit Insurance Corporation ("FDIC"), which was acting as receiver for Broadway Bank. In connection with that purchase the parties entered into a "Purchase and Assumption Agreement" ("PAA") and a "Commercial Shared-Loss Agreement" ("SLA").[2] The Second Amended Complaint ("SAC") alleges that MB violated the FCA in connection with these agreements by (1) managing the SLA loans in a manner that failed to minimize the FDIC's losses and maximize the FDIC's recovery, and (2) submitting claims to the FDIC for loans that were ineligible for reimbursement under the agreements.

Moncho filed his original complaint on August 1, 2014. The FDIC declined to intervene, and on July 20, 2020, the matter was unsealed. MB moved to dismiss the original complaint; in response, Moncho filed an amended complaint, which MB again moved to dismiss, resulting in the filing of the operative SAC on February 3, 2022. The District Court granted MB's motion to dismiss the SAC, holding that the FCA's public disclosure bar, see 31 U.S.C. §3730(e)(4), barred Moncho's claims, and that Moncho did not qualify for the original source exception to that bar. Moncho now appeals that dismissal.

---

[2] The PAA and SLA are not attached to Moncho's operative complaint; however, the SAC repeatedly cites specific sections of the PAA and SLA. We find that the PAA and the SLA are incorporated by reference into the SAC. Accordingly, we may consider them in our de novo review of the motion to dismiss. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

We conclude that we need not address the public disclosure bar because the SAC, on its face, fails to state a claim for a violation of the FCA, and we affirm the judgment of the District Court on that basis.

## I.  Pleading Standard

"We review the district court's grant of a motion to dismiss de novo, but may affirm on any basis supported by the record."  Coulter v. Morgan Stanley & Co. Inc., 753 F.3d 361, 366 (2d Cir. 2014).   Although we accept factual allegations in a complaint as true at this stage, "[w]e need not credit 'a legal conclusion couched as a factual allegation' or a 'naked assertion devoid of further factual enhancement.'"  Calcano v. Swarovski N. Am. Ltd., 36 F.4th 68, 75 (2d Cir. 2022) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).   "The FCA is an anti-fraud statute; accordingly, [Moncho] must plead fraud with particularity pursuant to Federal Rule of Civil Procedure 9(b)."  United States ex rel. Polansky v. Pfizer, Inc., 822 F.3d 613, 617-18 (2d Cir. 2016).   To meet the "heightened pleading requirements" of Rule 9(b), United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc., 865 F.3d 71, 82 (2d Cir. 2017), the SAC must make "particularized allegations of fact," rather than "conclusory statements" or "hypotheses."  United States ex rel. Ladas v. Exelis, Inc., 824 F.3d 16, 26-27 (2d Cir. 2016).

## II.  The False Claims Act

Counts I and II of the SAC allege claims pursuant to 31 U.S.C. §3729(a)(1)(A) and 31 U.S.C. §3729(a)(1)(B), which provide, respectively, that a party is civilly liable if

it "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." Count III of the SAC alleges an "implied false certification" claim, which asserts a distinct basis for liability, but is rooted in 31 U.S.C. §3729(a)(1)(A), and requires the same basic elements. See Universal Health Servs., Inc. v. United States ex rel. Escobar, 579 U.S. 176, 180, 187 (2016) ("Escobar") (noting that the theory relies on the "false or fraudulent" language of Section 3729(a)(1)(A)).

The FCA requires, as one would expect, a false claim for payment to be made to the government. Specifically, the FCA requires a plaintiff to allege that the defendant knowingly made a misrepresentation that was material to the government's payment decision. See Escobar, 579 U.S. at 181 ("What matters is . . . whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision."). "[T]he [FCA]'s materiality and scienter requirements" are "rigorous," and they are strictly enforced. Id. at 192. A failure to adequately plead either of these requirements is fatal to a relator's claim. See, e.g., United States v. Strock, 982 F.3d 51, 65-66 (2d Cir. 2020).

### A. Falsity or Misrepresentation

Moncho has failed to allege any "false or fraudulent claim" or "false record" under 31 U.S.C. §3729(a)(1)(A) and 31 U.S.C. §3729(a)(1)(B), respectively. The SAC does not identify any expressly false claim or false record that MB submitted to the FDIC. As

5

such, Moncho has not plausibly alleged his claims for relief under Counts I and II.  In fact, in his opposition to the motion to dismiss, Moncho appears to acknowledge the weakness of the claims in Counts I and II, focusing his arguments instead on the "implied false certification" claim in Count III.

An "implied false certification" claim does not require an "express falsehood[]," and can rely on "misrepresentations by omission."  Escobar, 579 U.S. at 187.  But even under this theory, the challenged claim must do more than just request payment; it must "make[] specific representations about the goods or services provided."  Id. at 190.  Not all misrepresentations are "actionable," and to be an "actionable misrepresentation," claims must omit "critical qualifying information."  Id. at 188-89.

Moncho has not plausibly alleged that MB made any specific representation to the FDIC about services provided, nor that MB omitted any critical information from its claims.  But, even assuming arguendo that Moncho had done so, simply alleging that MB made an "actionable misrepresentation" would not be sufficient.  Moncho must further allege that MB "knowingly" failed to disclose its noncompliance with a requirement that MB knew was "material" to the FDIC's payment decision.  See id. at 181.

**B.      Scienter**

The SAC fails to allege that MB acted with the requisite knowledge.  A defendant may be liable who "knowingly presents . . . a false or fraudulent claim for payment or approval," or "knowingly makes, uses, or causes to be made or used, a false record or

6

statement material to a false or fraudulent claim." 31 U.S.C. §§3729(a)(1)(A)-(B). To be liable under the implied false certification theory, a defendant must have "knowingly violated a requirement that the defendant knows is material to the Government's payment decision." Escobar, 579 U.S. at 181. Acting "knowingly" means that a person "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. §3729(b)(1)(A). It "require[s] no proof of specific intent to defraud." Id. §3729(b)(1)(B). While "Rule 9(b) permits knowledge to be averred generally . . . plaintiffs . . . still must plead the factual basis which gives rise to a strong inference of fraudulent intent," which "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Strock, 982 F.3d at 66 (citation and quotation marks omitted).

The SAC fails to allege with particularity that MB "knowingly" violated a requirement that it knew was material to the FDIC's payment decision. It alleges that MB knew that certain loans in the portfolio were ineligible for reimbursement from the FDIC. App'x at 14. General allegations must be supported with facts that give "rise to a strong inference of fraudulent intent." Strock, 982 F.3d at 66. This conclusory allegation is not supported by any facts demonstrating MB's "actual knowledge," "deliberate ignorance of the truth," or "reckless disregard of the truth." See 31 U.S.C. §3729(b)(1)(A).

7

Moncho also has not adequately alleged that MB had "both motive and opportunity to commit fraud." Strock, 982 F.3d at 66. In particular, the SAC does not allege a plausible motive. Moncho alleges that the FDIC reimbursed MB for eighty percent of the losses MB incurred on the loans. But if MB discharged a loan at a loss, it would still take twenty percent of that loss itself, giving it no obvious financial incentive to discharge a loan at a loss. Simply alleging that the FDIC would take a majority of any loss, without providing any reason why MB would want to take even a smaller loss, is insufficient to allege a plausible motive to commit fraud.

Moncho also has not alleged "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Id. While the SAC makes conclusory allegations as to what MB knew or should have known about the portfolio of loans, it makes only one non-conclusory allegation regarding MB's knowledge, that is, that a particular loan was ineligible because it was a "participation loan." App'x at 29-30 ¶¶ 93-100. But "participation loans" are not ineligible under the PAA – to the contrary, they are expressly included.[3] See App'x at 118 ("'Loans' means all of the following owed to or held by [Broadway Bank] as of Bank Closing: (i) loans . . . participation agreements, interests in participations . . . .").

**C. Materiality**

Similarly, Moncho fails to allege that MB's supposed misrepresentation was

---

[3] Even if "participation loans" were not permitted by the PAA, this allegation about a single loan would not suffice to demonstrate "a strong inference of fraudulent intent." Strock, 982 F.3d at 66.

"material." "A misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act." Escobar, 579 U.S. at 181. "Materiality must also be pleaded with particularity under Rule 9(b)." Foreman, 19 F.4th at 109 (citation and quotation marks omitted).

"The materiality standard 'is demanding,' inasmuch as it serves to protect the FCA from being transformed into 'a vehicle for punishing garden-variety breaches of contract or regulatory violations.'" Id. (quoting Escobar, 579 U.S. at 194); see also Escobar, 579 U.S. at 194 ("Materiality . . . cannot be found where noncompliance is minor or insubstantial."). "Relevant factors in evaluating materiality include: (1) whether the government expressly designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment; (2) the government's response to noncompliance with the relevant contractual, statutory, or regulatory provision; and (3) whether the defendants' alleged noncompliance was minor or insubstantial." Foreman, 19 F.4th at 110 (citation and quotation marks omitted).

We have considered each of these factors and find that the SAC fails to adequately allege materiality. Moncho fails to identify any provision of the PAA or the SLA that expressly conditions payment by the FDIC on MB's alleged obligation to maximize returns and minimize losses. Additionally, none of the materials he cites (Section 3.4 of the PAA, Article XI(e) of the PAA, and a June 2010 Letter sent from the FDIC to MB's Chief Financial Officer), expressly condition the FDIC's payment on MB's compliance.

9

Furthermore, as MB points out, Moncho fails to "allege any facts suggesting that the FDIC has excluded similar loans from other SLAs or taken action against other banks who engaged in similar alleged conduct." Appellee's Br. at 46. This failure is significant, particularly because the SAC asserts that the sort of behavior in which MB allegedly engaged was well-known in the industry, suggesting that the FDIC would have been alerted to the issue. See App'x at 13 ¶9.

Finally, the SAC does not adequately plead that "the defendants' alleged noncompliance was substantial." Strock, 982 F.3d at 65. "Materiality . . . cannot be found where noncompliance is minor or insubstantial." Escobar, 579 U.S. at 194. We "look[ ] at the 'contracts' purpose' and whether 'the defendants' noncompliance deprived the government of [the] intended benefits' of the contract." Foreman, 19 F.4th at 116 (quoting Strock, 982 F.3d at 65). The SAC alleges that the "SLA's purpose is to reduce the FDIC's burden of managing receivership assets" by selling the assets of the failed bank over which the FDIC is appointed receivership to the Assuming Institution. App'x at 12 ¶¶4-7. The PAA reflects the FDIC's determination that the assistance rendered by MB in this regard "is necessary to meet the obligation of the [FDIC] to provide insurance coverage for the insured deposits in [Broadway Bank]." App'x at 113. The SAC, which alleges only seven specific examples of alleged misconduct, does not plausibly allege that MB's alleged violations "go to the heart of the bargain." Foreman, 19 F.4th at 116-17 (citation and quotation marks omitted) (holding that allegations around improper billing practices and the failure to track government property did not

10

"necessarily undermine" the contract's "core purpose of providing management and support services for the army").

In sum, applying the factors set down by the Supreme Court, we find that the SAC fails to allege materiality with the requisite particularity.

## III. Conclusion

The SAC fails to allege that MB made any knowingly false claims, provided any knowingly false information, or "knowingly violated a requirement that the defendant knows is material to the [FDIC]'s payment decision." Escobar, 579 U.S. at 181.

We have considered Moncho's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the District Court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

11